516 S.E.2d 741

The UNIVERSITY OF WEST VIRGINIA BOARD OF TRUSTEES, a Statutory Corporation, on Behalf of WEST VIRGINIA UNIVERSITY, Appellant,

v.

David F. GRAF, Appellee.

No. 24972.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1998.

Decided Dec. 14, 1998.

Darrell V. McGraw, Jr., Esq., Attorney General, Samuel Spatafore, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for the Appellant.

James A. Liotta, Esq., Tharp, Liotta, Janes & Yokum, Fairmont, West Virginia, Attorney for the Appellee.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on July 15, 1997. Pursuant to that order, the circuit court granted $330,921.00 to the appellee, David F. Graf, M.D., for attorney fees and costs arising out of a grievance he filed with the West Virginia Education and State Employees' Grievance Board in 1985. In this appeal, the appellant, the University of West Virginia Board of Trustees on behalf of West Virginia University [hereinafter "the University"], contends that the circuit court erred by failing to apply the provisions of W.Va.Code § 29–6A–10 (1988)[1] and by granting excessive and unreasonable attorney fees under W.Va.Code § 18–29–8 (1992). The University further asserts that Dr. Graf's claims for attorney fees when combined with his award of lost wages exceed one million dollars thereby violating the State's constitutional immunity from suit.

This Court has before it the petition for appeal, all matters of record, and the briefs and argument of counsel. For the reasons set forth below, we reverse.

1. W.Va.Code § 29–6A–10 was amended in 1998.

## I.

## FACTS

On October 17, 1985, David F. Graf, M.D., a faculty member at the West Virginia University School of Medicine, filed a grievance with the West Virginia Education and Employees Grievance Board [hereinafter "Grievance Board"] regarding the fact that he was not permitted to pursue outside employment as an emergency room physician. On September 26, 1986, following several evidentiary hearings, the administrative law judge ruled in favor of Dr. Graf, finding that he had the right to continue outside employment. The administrative law judge's decision was appealed to the Circuit Court of Monongalia County on October 28, 1986. Thereafter, the circuit court affirmed the decision regarding Dr. Graf's right to procure outside employment, but reversed the portion of the administrative law judge's order which granted Dr. Graf lost wages in an unspecified amount. Dr. Graf appealed to this Court, and in an opinion, dated December 11, 1992, we affirmed the decision regarding his right to procure outside employment, but reversed the circuit court's ruling that the administrative law judge did not have the authority to award damages.[2] The case was remanded to the Grievance Board for a proper determination of the amount of lost wages owed to Dr. Graf.

Subsequently, a hearing was held before an administrative law judge to litigate the lost wages issue. On June 22, 1994, Dr. Graf was awarded $1,001,925.43. That decision was also appealed, but was upheld by the Circuit Court of Kanawha County. The appeal to this Court that followed was refused. Thereafter, Dr. Graf filed a petition with the Circuit Court of Kanawha County seeking to recover attorney fees and costs pursuant to W.Va.Code 18–29–8 (1992).[3] A hearing was

2. *Graf v. West Virginia University*, 189 W.Va. 214, 429 S.E.2d 496 (1992).

3. W.Va.Code § 18–29–8 (1992) provides:
    Any expenses incurred relative to the grievance procedure at levels one through three shall be borne by the party incurring such expenses except as to the costs of transcriptions as provided for in section six [§ 18–29–6] of this article.

held on the motion, and on March 3, 1997, Dr. Graf was awarded attorney fees and costs in the amount of $330,921.00 plus interest. The University filed a motion to amend the judgment which was denied. This appeal followed.

## II.

## STANDARD OF REVIEW

■ This Court reviews appeals from the West Virginia Educational Employees Grievance Board under W.Va.Code § 18–29–7 (1985). "W.Va.Code § 18–29–7 provides that a court may set aside a decision of a hearing examiner for the Board if it is arbitrary, capricious, an abuse of discretion, or contrary to law." *Graf v. University of West Virginia Board of Trustees/West Virginia University*, 202 W.Va. 419, 423, 504 S.E.2d 654, 658 (1998) (footnote omitted). "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." Syllabus Point 1, *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989). Of course, where "the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo.*" Syllabus Point 3, in part, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994).

## III.

## DISCUSSION

■ On appeal to this Court, the University raises three assignments of error. First, the University contends that the circuit court erred by not applying W.Va.Code § 29–6A–10 in limiting Dr. Graf's attorney fees to

In the event an employee or employer appeals an adverse level four decision to the circuit court or an adverse circuit court decision to the supreme court, and the employee substantially prevails upon such appeal, the employee or the organization representing the employee is entitled to recover court costs and reasonable attorney fees, to be set by the court, from the employer.

$2000.00. Second, the University argues that the circuit court erred because the attorney fees awarded were excessive and did not constitute "reasonable attorney fees" as contemplated by W.Va.Code § 18–29–8. Third, the University assigns error on the basis that the attorney fees, costs, and the part of the award of back pay in excess of $1,000,000.00 violated the State's constitutional immunity from suit. Because we find this last issue dispositive in this case, we decline to consider the remaining assignments of error and proceed with our discussion of constitutional immunity.

The University claims that as an agency of the State, it enjoys the same protection from suit which is afforded the State. Further, the University states that, because its insurance company has already provided Dr. Graf with $1,000,000.00 in satisfaction of his award on the underlying lost wages claim, any additional monetary relief would be paid from State funds and, therefore, is barred by constitutional immunity. Finally, the University asserts that this Court has stated that "the sovereign immunity doctrine is implicated when retroactive money relief against the State is sought, but does not operate to bar an award which is prospective in nature" citing Skaff v. Pridemore, 200 W.Va. 700, 706, 490 S.E.2d 787, 793 (1997) (per curiam). The University concludes that this is clearly a case of retroactive relief and because the award of attorney fees is paid from the State treasury, it is clearly barred.

Dr. Graf asserts that this issue was not raised below and was, therefore, waived. In addition, he asserts that this issue is barred because in the previous case of Graf v. W.Va. University, 189 W.Va. 214, 429 S.E.2d 496 (1992) ("Graf I"), this Court did not condition an award of damages on the presence of insurance coverage or limit damages to the amount of insurance coverage. Finally, Dr. Graf contends that no constitutional immunity could possibly attach because the money generated for the West Virginia University School of Medicine by him and his fellow faculty-member physicians is collected by the University Medical Corporation and then transferred to the School of Medicine. As a result, no taxing power of any University entity or Legislative appropriation is involved.

■ First, we note that the defense of sovereign immunity can be raised for the first time on appeal to this Court. This was made clear in the recent case of Skaff v. Pridemore, 200 W.Va. 700, 704–705, 490 S.E.2d 787, 791–792 (1997) where we stated:

"Our general rule is that nonjurisdictional questions not raised at the circuit court level, but raised for the first time on appeal, will not be considered." It is clear that "the constitutional immunity of the State of West Virginia from suit by Article VI, Section 35 of the Constitution of this State can not be waived by the Legislature or any other instrumentality of the State." Therefore, the appellant did not waive the defense of sovereign immunity by failing to raise it below. (Citations omitted.)

■ Second, we do not agree with Dr. Graf that we are barred from considering the issue of sovereign immunity by the "law of the case." This Court has articulated the law of the case as "[t]he general rule ... that when a question has been definitely determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal or writ of error and it is regarded as the law of the case." Syllabus Point 1, Mullins v. Green, 145 W.Va. 469, 115 S.E.2d 320 (1960). In Graf I, however, we did not definitely determine the question now before us. At issue, in part, in Graf I was whether Dr. Graf was entitled to a damage award for his lost wages. In answering that question in the affirmative, we determined that the hearing examiner below had the power to award damages for lost wages to Dr. Graf. We did not then consider nor decide the effect that sovereign immunity has on such an award.

Also, we are not convinced by Dr. Graf's assertion that private, not public, monies would be used to pay the award of attorney fees. In Graf I, we explained in detail the workings of the West Virginia University Medical Corporation ("WVUMC"). There we described WVUMC as a private corporation which performs all billing work done by the faculty in West Virginia University facilities. The fees, collected from patients

treated by faculty members as part of their regularly assigned duties, supplements a substantial part of the faculty-physicians' salaries. Therefore, it appears that any monies paid from the budget of WVUMC to Dr. Graf for attorney fees would of necessity be reimbursed by West Virginia University in order to prevent a shortfall of funds available for faculty salaries. Obviously, faculty members of the Medical School of West Virginia University are employees of West Virginia University so that the University is ultimately responsible for paying its employees. Consequently, public money would be expended in an award to Dr. Graf paid from the budget of WVUMC.

■ In addition, WVUMC is not the party responsible for paying Dr. Graf's attorney fees. In *Graf I*, this Court remanded the case to the Educational Employees Grievance Board for the hearing examiner to determine the amount of damages to be assessed. We noted, however, that "West Virginia University was the only named defendant at the Level IV hearing stage; therefore, only West Virginia University (not WVUMC) would be liable for the damages to be assessed by the hearing examiner on remand." *Graf I*, 189 W.Va. at 221, fn. 8, 429 S.E.2d at 503, fn. 8. In Syllabus Point 1, *City of Morgantown v. Ducker*, 153 W.Va. 121, 168 S.E.2d 298 (1969), this Court held that "[t]he Board of Governors of West Virginia University is a State agency, and, as such, is an arm of the State and, under Article VI, Section 35 of the Constitution of West Virginia, is immune from suit to enforce payment of a claim against such board."[4] Therefore, because West Virginia University would be responsible for any award of attorney fees, public funds would be involved, and constitutional immunity would apply. Accordingly, we now consider the effect of constitutional immunity on Dr. Graf's award of attorney fees.

■ At the outset, we believe a brief overview of this State's sovereign immunity doctrine is in order. The State's immunity from suit is derived from the provisions of Article VI, Section 35 of the West Virginia Constitution:

> The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.

"This constitutional grant of immunity is absolute and ... cannot be waived by the legislature or any other instrumentality of the State." *Mellon–Stuart Co. v. Hall*, 178 W.Va. 291, 296, 359 S.E.2d 124, 129 (1987) (citations omitted). This Court has explained that "the policy which underlies sovereign immunity is to prevent the diversion of State monies from legislatively appropriated purposes. Thus, where monetary relief is sought against the State treasury for which a proper legislative appropriation has not been made, sovereign immunity raises a bar to suit." *Id.* (Citations and footnote omitted.)

Nevertheless, over the years this Court has carved exceptions from the prohibition against suing the State. "The facial absoluteness of Section 35 ... has not prevented this Court from recognizing several contexts in which litigation may go forward even though the State government—and sometimes, even, the State treasury—could be seriously affected by the outcome of the litigation." *Gribben v. Kirk*, 195 W.Va. 488, 493, 466 S.E.2d 147, 152 (1995). These exceptions include injunctions to restrain or require State officers to perform ministerial duties, *C & O R'y Co. v. Miller, Auditor*, 19 W.Va. 408 (1882), aff'd, 114 U.S. 176, 5 S.Ct. 813, 29 L.Ed. 121 (1885); suits against State officers acting or threatening to act, under allegedly unconstitutional statutes, *Blue*

---

4. W.Va.Code § 18–26–11 (1969) transferred the powers and duties of the board of governors to the board of regents. In 1989, the Legislature repealed the code sections that established the board of regents. In W.Va.Code § 18B–1–1, *et seq.* (1989), the Legislature divided the powers of the board of regents between the "University of West Virginia Board of Trustees," which governs in part the West Virginia University system and the "Board of Directors of The State College System" which governs the state colleges, community colleges, and other post-secondary education.

*Jacket Consol. Copper. v. Scherr,* 50 W.Va. 533, 40 S.E. 514 (1901); recognition of a moral obligation by the State, *State ex rel. Davis Trust Co. v. Sims,* 130 W.Va. 623, 46 S.E.2d 90 (1947); counterclaims growing out of transactions wherein the State institutes actions at law against a citizen, *State v. Ruthbell Coal Co.,* 133 W.Va. 319, 56 S.E.2d 549 (1949); suits for declaratory judgment, *Douglass v. Koontz,* 137 W.Va. 345, 71 S.E.2d 319 (1952); mandamus relief to require the State Road Commission to institute proper condemnation proceedings upon the taking or damaging of land for public purposes, *Stewart v. State Road Commission of West Virginia,* 117 W.Va. 352, 185 S.E. 567 (1936); suits alleging liability arising from the State's performance of proprietary functions, *Ward v. County Court of Raleigh County,* 141 W.Va. 730, 93 S.E.2d 44 (1956); suits against quasi-public corporations which have no taxing power or dependency upon the State for financial support, *Hope Natural Gas v. West Virginia Turn. Com'n,* 143 W.Va. 913, 105 S.E.2d 630 (1958); mandamus relief to compel State officers, who have acted arbitrarily, capriciously or outside the law, to perform their lawful duties, *State ex rel. Ritchie v. Triplett,* 160 W.Va. 599, 236 S.E.2d 474 (1977); suits in which constitutional immunity is superseded by federal law, *Kerns v. Bucklew,* 178 W.Va. 68, 357 S.E.2d 750 (1987); suits that seek recovery under and up to the limits of the State's liability insurance coverage, *Pittsburgh Elevator v. W.Va. Bd. of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983); and suits by state employees seeking an award of back wages which is prospective in nature, *Gribben v. Kirk,* 195 W.Va. 488, 466 S.E.2d 147 (1995).

◼ We decided above that sovereign immunity is implicated under the facts of this case. Our next task is to determine whether the relief sought by Dr. Graf falls within any of the aforementioned exceptions. Dr. Graf seeks monetary relief which immediately eliminates several of the exceptions. This monetary relief is sought not from an individual State officer, the Court of Claims, nor from a quasi-public corporation but from the State itself. It did not arise from a counterclaim in an action originally instituted by the State, nor was the State sued in its proprie-

tary function. Instead, Dr. Graf's claim arose in a grievance procedure against the State as employer. Nevertheless, neither the underlying claim nor the instant one properly can be considered a claim for back pay. The underlying claim was for wages lost from outside employment due to the wrongful conduct of the State in interfering with Dr. Graf's statutory right to engage in such employment. It therefore resembles a tort action. Dr. Graf now seeks attorney fees accumulated in litigating this tort action. Because of the nature of the underlying claim, the type of relief sought, as well as by the process of elimination, we conclude that Dr. Graf's instant claim falls under the exception which allows suits that seek recovery under and up to the limits of the State's liability insurance coverage.

◼ In Syllabus Point 2 of *Pittsburgh Elevator v. W.Va. Bd. of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983), this Court stated that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." We further noted in Syllabus Point 1 of *Eggleston v. W.Va. Dept. of Highways,* 189 W.Va. 230, 429 S.E.2d 636 (1993),

> W.Va.Code, 29–12–5(a) (1986), provides an exception for the State's constitutional immunity found in Section 35 of Article VI of the West Virginia Constitution. It requires the State Board of Risk and Insurance Management to purchase or contract for insurance and requires that such insurance policy "shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the State of West Virginia against claims or suits."

*See also, State ex rel. W.Va. DOH v. Madden,* 192 W.Va. 497, 453 S.E.2d 331 (1994); and Syllabus, *Shrader v. Holland,* 186 W.Va. 687, 414 S.E.2d 448 (1992) (holding that "[t]he State shall not be made the defendant in any proceeding to recover damages because of the defective construction or condition of any state road or bridge," based upon an exclusion in the insurance policy purchased by the Department of Highways.)

█ As noted previously, in his underlying claim, Dr. Graf was awarded $1,001,925.43 in damages for lost wages. As the University states in its brief, $1,000,000.00 of this award was paid to Dr. Graf under a policy administered by CNA Insurance Companies. This sum constituted the limits of the State's liability insurance coverage in this matter. Therefore, Dr. Graf has already recovered up to the limits of the State's liability insurance coverage. Any further recovery would be in excess of the State's liability insurance coverage and is barred by the State's constitutional immunity from suit. Accordingly, we reverse Dr. Graf's award of attorney fees and costs in the amount of $330,921.00 plus interest.

We reiterate that Dr. Graf's underlying claim for lost wages, from which the case *sub judice* arises, resembles, more than anything else, a tort claim for purposes of a sovereign immunity analysis. Even though the claim was filed as a grievance pursuant to statute, it is based upon the State's intentional and improper conduct in denying to Dr. Graf, contrary to State regulations, the opportunity to earn compensation as a practicing physician outside of the State university system. The recovery sought by Dr. Graf was damages for lost wages and not back pay. Because of the nature of Dr. Graf's underlying claim, and the type of recovery sought, Dr. Graf can only recover under and up to the limits of the State's liability insurance coverage. This is in contrast to those plaintiffs who seek back pay awards. We emphasize that the interaction of constitutional immunity and back pay awards concerns a separate line of cases and is subject to a different analysis. In back pay cases, the controlling factor is whether the relief sought is prospective and *not* whether recovery is sought under and up to the limits of the State's liability insurance coverage. *See Gribben v. Kirk*, 195 W.Va. 488, 466 S.E.2d 147 (1995); and *Skaff v. Pridemore*, 200 W.Va. 700, 490 S.E.2d 787 (1997).

## IV.

### CONCLUSION

For the foregoing reasons, the order of the Circuit Court of Kanawha County which granted to Dr. Graf $330,921.00 in attorney fees and costs is reversed.

Reversed.

Justice McGRAW did not participate in the decision of this case.

STARCHER, Justice, dissenting:

The majority opinion is *per curiam,* a species that we have identified as ordinarily having little or no precedential value. In the instant case, the majority opinion's lack of precedential value is a blessing—for at least two reasons.

First, the next time we address a case involving the issue of "sovereign immunity," our future jurisprudence will not have to pay much attention to the majority opinion. Second, this dissent can be brief—and can forego attempting the substantial challenge of proposing a synthesis of, and suggested approach to, our sovereign immunity jurisprudence. Instead, this dissent can simply touch on a few (hopefully) pertinent points.

To its substantial credit, the majority opinion identifies a number of aspects of the sovereign immunity issue. But—as is entirely appropriate for a *per curiam* opinion—the majority opinion does not try to synthesize or further develop this area of our law.

Someday, I think, a number of thorny sovereign immunity issues should and will be more thoroughly addressed by this Court. My sense is that our sovereign immunity jurisprudence has come to be—from a theoretical or academic perspective—fairly confused.

I further sense that this jurisprudential confusion has unfortunately created a fertile field for opportunistic attempts by litigants to escape liability for their wrongdoing, by the last-minute assertion of sovereign immunity.

Frankly, what does rather ancient and eroded constitutional language have to do with a multi-million-dollar hospital corporation's last-ditch attempt to escape paying money to a doctor who had to spend $300,-

 

000.00 in attorney fees to get what he was legally entitled to? In my judgment, very little. Yet this scenario, of course, is the instant case in a nutshell.

As the majority opinion barely acknowledges, Dr. Graf got his fee award pursuant to a statute, *W.Va.Code,* 18–29–8 [1992]. Adhering to the principle of brevity, it is not necessary to detail how and why the Legislature puts attorney fee provisions in statutes. The fact is that they do so—a lot.

These attorney fee statutes are an explicit direction by the Legislature that government agencies shall pay a party's attorney fees when the agency has made such a substantial mistake that a citizen, or an employee, or a business, is required to use a lawyer to correct the agency's action.

Thus, payment of these attorney fees is a legislatively-mandated cost of running the government for the benefit of its citizens. Requiring a state agency to pay these attorney fees is the same as requiring a state agency to pay the gasoline bill for a state road truck at the local convenience store. A statute requiring an agency to pay attorney fees is no more impaired by the doctrine of sovereign immunity than is a statute requiring the same agency to pay its gasoline bills.

Dr. Graf was entitled to this fee payment under the statute. I think he should receive what the Legislature directed. The circuit judge read the statute in a straightforward manner and took the same position. I would affirm the circuit court.[1]

We are supposed to construe statutes constitutionally, if at all possible. Instead, the majority opinion stretches the other way, to rule that the duly-enacted statutory attorney fee provision, as applied to Dr. Graf, is unconstitutional.

The majority opinion is clearly an anomalous, result-oriented decision. Dr. Graf is seen as overreaching by asking for payment of his attorney fees, in addition to his million-dollar "lost income" recovery.

However, because attorney fee provisions are crucial to promoting effective legal advocacy for all citizens, we have no right to use archaic constitutional language to undermine statutes that apply such provisions to *all* citizens—just because, in a given case, the statute is utilized by a person who probably has plenty of money.

At the least, the majority should have found a more sensible way to say "no" to Dr. Graf.

For the foregoing reasons, I dissent.

---

1. The majority's discussion of the State's so-called "insurance coverage" is particularly confusing. My understanding is that the State reimburses its "insurance carrier" dollar-for-dollar for the carrier's annual payments, plus some sort of service fee. If this is so, then the insurance carrier is simply a pass-through for state funds. By choosing to run an agency's statutorily required payments through an insurance company, can an agency avoid the clear requirements of duly-enacted statutes?