517 S.E.2d 479

**Julia L. WESTFALL, Appellant,**

v.

**CITY OF DUNBAR, Appellee.**

**No. 25332.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 1999.

Decided June 28, 1999.

---

**248**

Kelly Elswick, Esq., Howley & Venezia, Charleston, West Virginia, Attorney for Appellant.

Travis S. Haley, Esq., Pullin, Knopf, Fowler & Flanagan, Charleston, West Virginia, Attorney for Appellee.

PER CURIAM:

This is an appeal by Julia Westfall (hereinafter "Appellant") from an order of the Circuit Court of Kanawha County granting summary judgment to the City of Dunbar (hereinafter "City" or "Appellee") in a personal injury action. The Appellant maintains that the lower court erred in determining that the City was immune under West Virginia Code § 29–12A–5(a)(5) (1999), the Governmental Tort Claims and Insurance Reform Act (hereinafter "Act"). We agree and reverse and remand for further proceedings consistent with this opinion.

## I. Facts

On April 11, 1994, Dunbar city police officer Brian L. Hite was sent to Roxalana Road in Dunbar, West Virginia, to investigate the reported presence of an oil-based substance causing slippery conditions on the road surface. Upon arriving at the scene, Officer Hite noticed a slippery substance extending down the east-bound lane of Roxalana Road. He further observed that a van had slid off the road into a ditch and that another vehicle was attempting to tow the van out of the ditch.

Officer Hite stopped his vehicle in the east-bound lane, below the crest of a hill. He turned on the vehicle's rotator lights and directional signal and exited the vehicle. While standing outside the vehicle, Officer Hite observed the Appellant's vehicle approaching in the east-bound lane. The Appellant's vehicle slid into the officer's cruiser, injuring the Appellant's head, neck, back, and jaw.

The Appellant initiated a civil action against the City of Dunbar, the Dunbar Sanitary Board, and Roxalana Hills Associates, Limited Partnership.[1] She asserted that Officer Hite was negligent in the operation of his vehicle and in the performance of his duties. She maintained that Officer Hite had parked his vehicle unsafely and in a manner that created a hazard to oncoming motorists. She also alleged that Officer Hite improperly and negligently secured the accident scene and failed to adequately identify the hazards of the scene, including his own vehicle.

The City moved for summary judgment, alleging immunity under the Act, and a hearing was before the lower court. The Appellant presented the testimony of Police Chief Edward A. Eisley[2] indicating that Officer Hite was negligent in the performance and implementation of his duties and in the operation of his vehicle. Chief Eisley testified that Officer Hite's negligent performance of his duties caused the accident, as follows: "Certainly, there's a restricted field of vision there on a downhill grade, and he parks his cruiser and allows people to drive into that hazardous area and then requires them to take evasive action. I think that's negligent." Chief Eisley also explained:

What I'm saying is there is some general common sense information that was clearly outlined in the manuals that he received; one, that you park the cruiser in a safe manner, okay, and that you exercise and

---

1. The Appellant voluntarily dismissed the Sanitary Board and Roxalana Hills Associates from this civil action.

2. Chief Eisley has twenty years of experience as an active duty police officer, having served as chief of police in four districts of New York and West Virginia. Chief Eisley is also a certified instructor in both states. He was not an officer for the City of Dunbar.

use available emergency equipment to warn traffic. That was not done. That doesn't have to be anything that is that specific out of the manual. That is general common sense, and it was listed as such, as general common sense as to what any responding police officer does upon the scene of an accident. He didn't do it.

The City introduced the testimony of the investigating officer at the scene of the accident, State Police Trooper Kevin Davis. When asked whether Officer Hite's placement of his vehicle "played a role in causing Ms. Westfall's accident," Trooper Davis responded: "No. Not in my opinion, no, it had nothing to do with the accident. It just happened to be in the path of the vehicle that was out of control that hit it."

The lower court granted the City's motion for summary judgment, finding that the City was immune from liability based upon West Virginia Code § 29–12A–5(a)(5). The lower court reasoned as follows:

1. The Court finds that there appear to be some genuine issues of material fact in this matter.

2. However, the Court concludes as a matter of law that the defendant is entitled to immunity under the provisions of *West Virginia Code* § 29–12A–5(a)(5) which immunizes the defendant City of Dunbar from liability arising out of the manner or method of police enforcement.

II. West Virginia Code § 29–12A–5(a)(5)

West Virginia Code § 29–12–5 enumerates circumstances under which a political subdivision will be immune from liability. Section 5(a)(5) provides that a political subdivision is immune from liability if a loss or claim results from "[c]ivil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection." The definition of "method of providing" has been the subject of considerable discussion.

In syllabus point three of *Beckley v. Crabtree,* 189 W.Va. 94, 428 S.E.2d 317 (1993), this Court explained that "[t]he phrase 'the method of providing police, law enforcement or fire protection' contained in W. Va.Code, § 29–12A–5(a)(5) refers to the formulation and implementation of policy related to how police, law enforcement or fire protection is to be provided." Syllabus point four continued, "Resolution of the issue of whether a loss or claim occurs as a result of 'the method of providing police, law enforcement or fire protection' requires determining whether the allegedly negligent act resulted from the manner in which a formulated policy regarding such protection was implemented." 189 W.Va. at 95, 428 S.E.2d at 318.

In *Beckley,* a state trooper was injured when the county sheriff's shotgun accidentally discharged as the sheriff was attempting to return the gun to the trunk of the car after apprehending a suspect. We concluded that the alleged act of negligence, discharge of the gun, was not part of the "method of providing," reasoning that "[t]he methods employed by the law enforcement officers who detained and arrested the suspect were complete before the gun discharged. [The sheriff] was simply returning a shotgun to the trunk of the car when the accident occurred." *Id.* at 98, 428 S.E.2d at 321. We found that the county commission was not immune from liability because "[a]lthough this incidental action occurred within the scope of employment, it was not so closely related or necessary to effectuating the arrest as to be considered a component of 'the method of providing law enforcement protection.'" *Id.*

In *Beckley,* we also discussed *State v. Terrell,* 588 S.W.2d 784 (Tex.1979), in which the Supreme Court of Texas defined "the method of providing police or fire protection," as follows:

The term "method" is defined as "a procedure or process for attaining an object" and as an "orderly arrangement, development or classification." Webster's Third New International Dictionary 1422–23 (1966). The term is synonymous with the words "mode," "plan," "design," or "system." Id. Thus, the "method" of performing an act refers to the decision or plan as to how the act is to be performed. Similarly, the "method of providing police or fire protection" refers to the govern-

mental decisions as to how to provide police or fire protection.

588 S.W.2d at 787.

The *Terrell* case involved the Texas Highway Department's policy of detecting motorists exceeding the speed limit by use of radar and motor vehicles. The Supreme Court of Texas explained:

> Such a policy decision is not subject to an attack of negligence under this Act. This policy, however, obviously does not include directing the officer to strike any vehicle in his path in apprehending a speeder. The accident which occurred in this case was not a part of the formulated policy. Therefore, the State is subject to liability for injuries resulting from the negligence, if any, of the highway patrolman in colliding with Mr. Terrell's vehicle.

588 S.W.2d at 788. The *Terrell* Court concluded that the Legislature "intended to exclude from the [Texas Tort Claims] Act only those acts or omissions which constitute the execution of or the actual making of those policy decisions." *Id.* Further, the Texas Court stated that, "if the negligence causing an injury lies in the formulating of policy— i.e., the determining of the method of police protection to provide—the government remains immune from liability. If, however, an officer or employee acts negligently in carrying out that policy, government liability may exist under the Act." *Id.*

In *Mallamo v. Town of Rivesville*, 197 W.Va. 616, 477 S.E.2d 525 (1996), this Court addressed the phrase "the method of providing police, law enforcement or fire protection" in the context of an accidental discharge of a weapon. We reiterated our *Beckley* reasoning and examined the approach adopted in *Jackson v. City of Kansas City*, 235 Kan. 278, 680 P.2d 877 (1984), a situation in which two fire trucks from different fire stations collided, injuring the plaintiffs and several firemen. 680 P.2d at 882. The Supreme Court of Kansas rejected the city's claim that, because the accident occurred while two of its fire trucks were responding to a fire alarm, it was immune from liability. *Id.* at 889. Rather, the court concluded that the applicable statute, which grants immunity for injury resulting from "the method of providing police or fire protection,"

> is aimed at such basic matters as the type and number of fire trucks and police cars considered necessary for the operation of the respective departments; how many personnel might be required; how many and where police patrol cars are to operate; the placement and supply of fire hydrants; and the selection of equipment options. Accordingly, a city is immunized from such claims as a burglary could have been prevented if additional police cars had been on patrol, or a house could have been saved if more or better fire equipment had been purchased. We do not believe [the applicable statute] is so broad as to immunize a city on every aspect of negligent police and fire department operations. Should firemen negligently go to the wrong house and chop a hole in the roof thereof, we do not believe the city has immunity therefor on the basis the negligent act was a part of the method of fire protection.

*Id.* at 890.[3]

We concluded as follows in *Mallamo*,

> [T]he evidence reveals that the officers acted pursuant to formulated policy when they unholstered their weapons upon observing a high-powered rifle in a bedroom of plaintiff's home. However, the discharge of Van Pelt's weapon was not the result of implementing such policy. Thus, because the injuries plaintiff sustained were not the result of the method of providing police, law enforcement or fire protection, within the meaning of W. Va.Code, 29–12A–5(a)(5) [1986], the Town of Rivesville would not have been immune from liability thereunder. Consequently, under W. Va.Code, 29–12A–4(c)(2) [1986], supra, the Town of Rivesville would have been

---

**3.** See *Forbus v. City of Denton*, 595 S.W.2d 621, 623 (Tex.Civ.App.1980) (Deciding whether to provide mattresses to inmates was policy formulation for which governmental entity would be immune; however, the decision as to what particular type of mattress to provide was policy implementation and was not exempt from claim of negligence.)

liable for the negligence, if any, of its employee, Wilson.

197 W.Va. at 626, 477 S.E.2d at 535.

Thus, in our prior expeditions into this definitional conundrum, we have emphasized that the question to be posed in these cases is "whether the allegedly negligent act resulted from the manner in which a formulated policy ... was implemented." *Beckley,* 189 W.Va. at 98, 428 S.E.2d at 321. In resolving the issues underlying that question, we have distinguished between the general formulated method and the more specific individual act of alleged negligence. The *Beckley* scenario is particularly analogous to the present case. The *Beckley* court found that while the return of a shotgun to a car truck occurred within the scope of employment and was incidental to the method of providing law enforcement, it was not a "component" of the method of providing law enforcement sufficient to propel it within the realm of statutory immunity.

The Texas *Terrell* case also presents an analogous logical paradigm. The policy decision permitting the use of radar to detect speeding motorists was granted immunity, but the accident occurring incident thereto was not. Likewise, the *Mallamo* reasoning is instructive; unholstering a weapon was part of a formulated policy, but discharging that weapon was "not the result of implementing such policy." 197 W.Va. at 626, 477 S.E.2d at 535.

■ Syllabus point one of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), accentuated our broad powers of review, specifying that "[a] circuit court's entry of summary judgment is reviewed de novo." Syllabus point one of *Fayette County National Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997), provided the general parameters for summary judgment: " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syl. Pt. 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963)."

■ Syllabus point three of *Lilly* emphasized the necessity for complete and thorough summary judgment orders, explaining that "[a]lthough our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed." 199 W.Va. at 350, 484 S.E.2d at 233. We stated in *Lilly* that "the circuit court's order must provide clear notice to all parties and the reviewing court as to the rationale applied in granting or denying summary judgment." 199 W.Va. at 354, 484 S.E.2d at 237. "[O]ur function, as a reviewing court is to determine whether the stated reasons for the granting of summary judgment by the lower court are supported by the record." *Lilly,* 199 W.Va. at 353, 484 S.E.2d at 236.

While the brevity of the order in the present case is troubling, our de novo review of this matter enables this Court to determine conclusively that the allegedly negligent action did not result from the manner in which a formulated policy was implemented. In the language of *Beckley,* "although this incidental action occurred within the scope of employment, it was not so closely related or necessary to effectuating the ... [investigation] as to be considered a component of 'the method of providing law enforcement protection.' " 189 W.Va. at 98, 428 S.E.2d at 321. We consequently reverse the summary judgment granted by the lower court, find that the City of Dunbar is not entitled to immunity under West Virginia Code § 29–12A–5(a)(5), and remand for further proceedings consistent with this opinion.

Reversed and remanded.