549 S.E.2d 286

**STATE of West Virginia ex rel. Patricia E. McLAUGHLIN, by Her Committee, Cynthia J. Ward, Petitioner,**

v.

**The WEST VIRGINIA COURT OF CLAIMS, David M. Baker and Benjamin Hays Webb, II, Judges of the West Virginia Court of Claims, and Cheryl M. Hall, Clerk of the West Virginia Court of Claims, Respondents.**

**The West Virginia Department of Transportation, Division of Highways, Intervenor.**

No. 28716.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 2001.

Decided Feb. 22, 2001.

Dissenting Opinion of Chief Justice McGraw July 6, 2001.

413

Robert P. Fitzsimmons, Joseph J. John, Wheeling, for the Petitioner.

Michael R. Crane, Forman & Crane, M.E. "Mike" Mowery, Jennifer Bailey Walker, Charleston, for the Respondents.

Anthony G. Halkias, Charleston, for the Intervenor.

PER CURIAM.

Petitioner Patricia E. McLaughlin, by committee, requests that this Court issue a writ of mandamus directing the Respondent Court of Claims to re-docket her claim for its consideration and requiring the Court of Claims to apply the doctrines of *res judicata* or collateral estoppel to give effect to a jury verdict of the Circuit Court of Marshall County, returned in her favor against the West Virginia Department of Transportation, Division of Highways ("DOT").[1] Upon our

1. Petitioner's suit against the DOT was permitted by West Virginia Code § 29–12–5(a) (1996) (Repl.Vol.1999), which "estop[s] [the State] from relying upon the constitutional immunity of the state of West Virginia" where policies of insurance are purchased by the State Board of Risk and Insurance Management. *See also* Syl. Pt. 2, *Pittsburgh Elevator Co. v. West Virginia Board of*

*Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983) (holding that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State").

review of the record in conjunction with established principles of law, we find no basis for issuing the relief requested by Petitioner.

## I. Factual and Procedural Background

On March 17, 1990, Petitioner was involved in a collision when another vehicle crossed the center line and collided head-on with her vehicle while she was traveling on State Route 86 in Marshall County. As a result of this accident, Petitioner sustained serious and permanent injuries which have left her confined to a wheelchair and rendered her an incompetent in need of a committee.[2] On January 2, 1991, Petitioner filed a civil action against both the driver of the other vehicle, Ross W. Campbell, and DOT in the Circuit Court of Marshall County. DOT was named as a party due to Petitioner's allegation that it had negligently maintained the roadways by failing to erect guardrails during an ongoing construction project.[3]

A year after filing her civil complaint, Petitioner filed a Suggested Form of Notice of Claim and Claim in the Court of Claims,[4] to which she attached a copy of the complaint filed in circuit court. Her claim was docketed by the Court of Claims, but stayed pending the disposition of the circuit court action.

On October 25, 1993, this matter proceeded to trial on the issue of liability alone. Although the jury returned a verdict of no liability with regard to DOT, the circuit court entered a judgment notwithstanding the verdict in favor of Petitioner as to liability

against DOT.[5] As a result of settlement negotiations that ensued between January and June of 1994, DOT tendered one million dollars to the circuit court on August 30, 1994, pursuant to Rule 68 of the West Virginia Rules of Civil Procedure.[6] Based on its position that it had tendered payment of the one million dollar limits of the State's insurance policy, DOT petitioned this Court for a writ of prohibition to prevent the trial court from proceeding to the damage portion of the trial. We denied DOT's request in *State ex rel. West Virginia DOT v. Madden,* 192 W.Va. 497, 453 S.E.2d 331 (1994), upon our determination that "a final determination by the trial court as to the limits of insurance coverage available in this case is necessary." *Id.* at 500, 453 S.E.2d at 334. The issue of the amount of insurance coverage available was not resolved until the Kanawha County Circuit Court[7] issued an order, entered on September 14, 2000, finding only one million dollars of coverage.[8]

On August 30, 1994, a six-person jury heard the evidence and returned a verdict on the issue of damages. The jury assessed damages in the amount of 16.5 million dollars and the circuit court, by judgment order entered on March 30, 1995, reduced the verdict to the one million dollar offer of judgment that had already been tendered by DOT.

In March 1996, Petitioner sought to have the circuit court verdict given *res judicata*

---

2. According to the allegations of the complaint, Petitioner sustained injuries to her head, neck, arms, chest, legs, internal organs, as well as psychological manifestations, all of which have combined to render her permanently disabled.

3. The trial court determined that DOT "was negligent for failing to erect guardrails in the area of the accident for five months after taking down the old guardrails." *State ex rel. West Virginia DOT v. Madden,* 192 W.Va. 497, 498, 453 S.E.2d 331, 332 (1994).

4. *See* W.Va.Code § 14-2-16 (1967) (Repl.Vol. 2000) (setting forth procedures for filing and docketing of claims before the Court of Claims).

5. *See* W.Va.R.Civ.P. 50(b).

6. Petitioner accepted that amount under subsection (b)(3) of Rule 68 as a partial payment of her claims on September 19, 1994.

7. The case was transferred from Marshall County to Kanawha County upon the intervention of the Board of Risk pursuant to the requirements of West Virginia Code § 14-2-2 (1976) (Repl.Vol. 2000).

8. In that same ruling, the circuit court found that effective July 1, 1985, the Board of Risk reduced the insurance coverage at issue from six million to one million dollars. The fact that the state's insurance policy provided coverage in an amount less than 1/16th of the jury award underscores the potential for inequity inherent in the current statutory scheme, under which the Legislature addresses claims made against the state. One option available to reduce this potential for inequity is to increase the amount of the insurance coverage, at least to its pre-1985 level.

effect by the Court of Claims. In response, DOT filed a motion to dismiss the Court of Claims proceeding on grounds of lack of subject matter jurisdiction.[9] After hearing argument on the motion to dismiss, the Court of Claims dismissed Petitioner's claim on February 20, 1997, upon its conclusion that it lacked jurisdiction to hear the claim. Petitioner sought reconsideration of the decision to dismiss her Court of Claims action in October 2000, but in a letter dated October 20, 2000, the Court of Claims declined, stating that "the claim is and has been dismissed from the docket of the Court by its former order." Petitioner now seeks the issuance of a writ of mandamus from this Court to have her claim re-docketed with the Court of Claims.

## II. Standard of Review

Our standard of review for issuing writs of mandamus is well-established:

"A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

Syl. Pt. 10, *State ex rel. Marockie v. Wagoner*, 191 W.Va. 458, 446 S.E.2d 680 (1994).

## III. Discussion

This Court has original jurisdiction[10] to issue a writ of mandamus. We have previously relied upon this type of extraordinary relief when a public officer or body has failed in the performance of a mandatory, non-delegable duty. " 'Mandamus is a proper remedy to require the performance of a nondiscretionary duty by various governmental agencies or bodies.' Syllabus Point 1, *State ex rel. Allstate Insurance Co. v. Union Public Service District*, 151 W.Va. 207, 151 S.E.2d 102 (1966)." Syl. Pt. 4, *State ex rel.*

*Affiliated Constr. Trades Found. v. Vieweg*, 205 W.Va. 687, 520 S.E.2d 854 (1999). Before this Court can compel the performance of such a nondiscretionary duty, however, we must first determine whether the Petitioner is entitled to the exercise of such duty. " 'To entitle one to a writ of mandamus, the party seeking the writ must show a clear legal right thereto and a corresponding duty on the respondent to perform the act demanded.' Syl. Pt. 2, *State ex rel. Cooke v. Jarrell*, 154 W.Va. 542, 177 S.E.2d 214 (1970)." Syl. Pt. 1, *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1988).

The Court of Claims is an administrative arm of the West Virginia Legislature, not a court created within the judicial branch of government. The Legislature has established the Court of Claims by law[11] and delegated to it the Legislature's power to investigate certain claims against the State that may not be prosecuted in the courts because of the State's sovereign immunity.[12] *See* W.Va.Code § 14–2–1 (1967) (Repl.Vol. 2000). The Court of Claims is also charged by law with the duty of recommending payment of such of those claims as it finds worthy, in specified amounts, to be paid by specific appropriations designated by the Legislature for payment of claims against the State, which it recognizes as a moral obligation of the State notwithstanding the immunity of the State from suit in its various courts. *See* Syl. Pt. 3, *State ex rel. C & D Equip. Co. v. Gainer*, 154 W.Va. 83, 174 S.E.2d 729 (1970) (holding that "[o]nly the legislature can authorize such payments [when sovereign immunity exits] if and when they are found and declared by it to be moral obligations of the State, and specific appropriations made for payment thereof"). Because the Court of Claims is a public body created by law, a writ of mandamus may issue against this body, in the same fashion as it issues against any other public officer or

---

9. In support of its motion to dismiss, DOT cited West Virginia Code § 14–2–14(5) (1967) (Repl. Vol.2000), which denies jurisdiction to the Court of Claims "[w]ith respect to which a proceeding may be maintained against the State, by or on behalf of the claimant in the courts of the State."

10. *See* W.Va. Const. art. VIII, § 3; W.Va.Code §§ 53–1–2 to –8 (1933) (Repl.Vol.2000).

11. W.Va.Code § 14–2–4 (1967) (Repl.Vol.2000).

12. W.Va. Const. art. VI, § 35.

body to which the Legislature has delegated its powers.[13]

■ The issue that remains is whether the re-docketing of Petitioner's claim is a mandatory, non-delegable duty of the Court of Claims. Section 14 of the Court of Claims legislation reads as follows:

The jurisdiction of the court shall not extend to any claim:

1. For loss, damage, or destruction of property or for injury or death incurred by a member of the militia or national guard when in the service of the State.

2. For a disability or death benefit under chapter twenty-three [§ 23–1–1 et seq.] of this Code.

3. For unemployment compensation under chapter twenty-one-A [§ 21A–1–1 et seq.] of this Code.

4. For relief or public assistance under chapter nine [§ 9–1–1 et seq.] of this Code.

5. With respect to which a proceeding may be maintained against the State, by or on behalf of the claimant in the courts of the State.

W.Va.Code § 14–2–14 (1967) (Repl.Vol.2000).

■ Given the very serious nature of Petitioner's injuries, as reflected by the record and the jury's large verdict, and given the fact that there was but one tortfeasor found at fault in the Marshall County action related to those injuries, it is more than understandable that the Petitioner in this case would seek a remedy from the Legislature in excess of the limited amount of insurance available to her. It is difficult for this Court to imagine a situation more deserving of the Legislature's careful consideration in light of its jurisdictional mandate to consider claims which the State "should in equity and good conscience discharge and pay." W.Va.Code § 14–2–13(1) (1967) (Repl.Vol.2000). We are, however, constrained to carefully respect the

separation of powers set forth in our State's Constitution[14] and leave to the Legislature the consideration of that claim without inappropriate interference from either of the other branches of the government. Our sole inquiry is whether the Legislature has imposed on its Court of Claims a mandatory, non-delegable duty to re-docket Petitioner's claim. As noted, only the Legislature can authorize the payment of claims exempt from judicial consideration by virtue of principles of sovereign immunity. *See Gainer*, 154 W.Va. at 84, 174 S.E.2d at 730, syl. pt. 3.

Turning to the provisions of West Virginia Code § 14–2–14(5), upon which the Court of Claims relied in dismissing Petitioner's claim, we are compelled to apply this provision as written based on our conclusion that it is clear and free of ambiguity. *See* Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) (stating that "[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation"). Under section 14, the Legislature has withheld from the Court of Claims the power to consider "any claim ... [w]ith respect to which a proceeding may be maintained against the State, by or on behalf of the claimant in the courts of the State." W.Va.Code § 14–2–14(5). Petitioner argues that since she may not maintain a claim in excess of one million dollars in the courts, her claim for recovery in excess of one million dollars—seen by the Petitioner as the difference between the jury verdict and the insurance paid—may be maintained in the Court of Claims. We think the legislative decision to withhold certain claims from consideration by the Court of Claims, as delineated in section 14 of the Court of Claims legislation, is intended to be applied in a broader fashion than that suggested by Petitioner.

> The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature. W.Va. Const. art. V, § 1.

---

**13.** *See State ex rel. Brotherton v. Blankenship*, 157 W.Va. 100, 207 S.E.2d 421 (1973) (awarding writ of mandamus to legislative leaders who sought to compel the Clerk of the House of Delegates, a legislative officer, to publish the Budget Act, as passed, without certain changes attempted by the governor).

**14.** Section one of article V, provides that:

Petitioner's claim was for the negligence of the State in maintaining its highways during construction; this negligence was determined to be the proximate cause of Petitioner's injuries for which the Marshall County jury awarded more than sixteen million dollars in damages. Petitioner was permitted to, and did in fact, maintain a proceeding against the State in the Circuit Court of Marshall County with respect to her claim up to the amount of the state's insurance. Accordingly, the relevant statute clearly states that the "jurisdiction" of the Court of Claims does not "extend to" that claim.[15] W.Va.Code § 14–2–14(5).

Nothing in this opinion should be construed to discourage the Legislature from carefully examining this and other similar claims, notwithstanding current procedures for handling matters before the Court of Claims. We have dealt here solely with the issue presented: the extent of the non-delegable, non-discretionary duty of the Court of Claims in the circumstances presented to us.[16] We leave to the Legislature the resolution of this and other like claims.

For the reasons stated, we deny Petitioner's request for a writ of mandamus.

Writ denied.

McGRAW, Chief Justice, dissenting.
(Filed July 6, 2001)

As the majority notes in footnote 8, supra, there is a great "potential for inequity inherent in the current statutory scheme." Nonetheless, the majority goes on to deny the petitioner relief by making use of our current, inequitable statutory scheme.

First I disagree with the majority's interpretation of the duty of the Court of Claims to re-docket the petitioner's claim, for that portion of the award in excess of the insurance coverage. As the majority notes, Ms. McLaughlin was able to file suit in the ordinary courts of this state by virtue of W. Va.Code § 29–12–1, et seq., but her recovery was limited to $1,000,000. In the instant case, she seeks another opportunity to ask the state to provide her the rest of her award, which she argues is a separate claim that the Court of Claims must consider.

As the majority points out, the Court of Claims was created to determine whether or not the state might have a "moral obligation" to compensate an injured party, even though the state would otherwise enjoy statutory immunity from suit. As a former President of the West Virginia State Senate, I appointed judges to the Court of Claims, with the understanding that the members of that court had a duty to find such moral obligations when the facts of a particular case demanded it. The question the Court of Claims must ask is not, "how much can we afford to pay?" but rather "do we have a moral obligation to this injured party?"

In the instant case, a jury of West Virginia citizens determined that Ms. McLaughlin was entitled to $16,000,000 in damages. As we have stated before, "the juror is an integral part of our democratic ideal, representing the conscience of the community." *Roberts v. Stevens Clinic Hospital, Inc.,* 176 W.Va. 492, 513, 345 S.E.2d 791, 813 (1986) (McGraw, J., dissenting). If the jury is the conscience of the community, who better to provide guidance as to what is and what is not a moral obligation?

The enabling statute sets forth the general powers of the Court of Claims: "The court shall, in accordance with this article, consider claims which, but for the constitutional immunity of the State from suit, or for some statutory restrictions, inhibitions or limitations, could be maintained in the regular courts of the State. . . ." W. Va.Code § 14–2–12 (1977). Because of the limits of the state's liability insurance, we have a case where the

---

15. We note that in oral argument, Petitioner's counsel was asked for specific authorities that might support a "splitting" of the claim. Counsel has not supplied the Court with such authority and we have similarly found no authority, despite a careful search for the same.

16. We do not reach Petitioner's claim that the doctrines of *res judicata* and collateral estoppel apply. The decision of the judicial branch of government in *Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 359 S.E.2d 124 (1987), to apply those doctrines in the judicial branch of government to decisions of the Court of Claims, does not, of itself, imply that the judicial branch would, or should, require the Legislature to apply those same doctrines in connection with claims presented for consideration in the Court of Claims.

state was not immune, up to the first $1,000,000, and then the state "regained" its sovereign immunity for every dollar thereafter.

Essentially, the $15,000,000 of the jury verdict she did not receive has become a separate claim against the state. With respect to this amount, she is in the same position any other claimant is in who is unable, for whatever reason, to make a claim under W. Va.Code § 29–12–1 *et seq.* Thus I would find that Ms. McLaughlin indeed has a claim that, "but for the constitutional immunity of the State from suit ... could be maintained in the regular courts of the State," and as such, should be examined by the Court of Claims.

I have additional concerns about this opinion, however. While the outcome of this particular case turned upon the duty of the Court of Claims to re-docket this claim, the real issue in this case is the immunity of the state from suit. I believe the Court rejected an invitation to re-examine our sovereign immunity [1] jurisprudence.

Ms. McLaughlin won a jury verdict in excess of $16,000,000 because of her serious injuries, and her lifelong need for medical care. Due to the cost of medical care, especially for those suffering permanent injury, it is not uncommon for accident victims to sustain millions and millions of dollars in damages. However, because of the constitutional artifact of state immunity from suit,[2] Ms. McLaughlin was left with only 1/16th the compensation a jury thought she deserved. As I have mentioned before, this system is beset with problems, chief among them that

the state actually benefits from a *lack* of insurance coverage:

> A major problem with this system is that, because activity that is "not covered" by insurance is immune, the system inadvertently creates an incentive for the state's insurers and their lawyers to argue at every opportunity that a given activity is not covered by any insurance. This sentiment, which is the perverse opposite of the desires of a normal insured party who wants maximum coverage in an accident, runs counter to the goals of risk spreading and protection from catastrophic loss that our law has come to favor:

*Ayersman v. West Virginia Div. of Environmental Protection,* 208 W.Va. 544, 548, 542 S.E.2d 58, 62 (2000) *(per curiam )* (McGraw, J., concurring).

I agree that the state should be immune from suit for its true decision-making duties, and that the possible availability of insurance coverage should not eliminate that immunity. When the state acts as a policy maker, it is, arguably, just manifesting the will of a majority of the people. If the Legislature raises the speed limit from 55 to 70, it is really the people, acting as a democracy, that raised the limit. Because a majority of our citizens, acting through their representatives, chose to raise the limit, it cannot be "negligent" to have done so. To find otherwise could cripple any government function. In one of our leading cases on this subject, Justice Albright explained this dilemma:

> In short, it is deceptively inviting to conclude that no common-law immunities apply which are not expressly set out in the State's insurance policies, and that a

---

1. There are varying theories over the source of this concept:

   > The origins of sovereign immunity remain clouded. Some maintain that it began with the personal prerogatives of the King of England. As Justice Traynor explained, In the feudal structure the lord of the manor was not subject to suit in his own courts. The king, the highest feudal lord, enjoyed the same protection: no court was above him. Before the sixteenth century this right of the king was purely personal. Only out of sixteenth century metaphysical concepts of the nature of the state did the king's personal prerogative become the sovereign immunity of the state.

   > Others believe that sovereign immunity probably had its origin in the old theory that sovereignty was inherent in the crown, and that the king could do no wrong, and hence could not be sued.

   Kelley H. Armitage, *It's Good to Be King (At Least it Used to Be and Could Be Again): A Textualist View of Sovereign Immunity,* 29 Stetson L.Rev. 599, 601–02 (2000) (footnotes and internal quotations omitted).

2. For a thorough overview of the history of sovereign immunity in Anglo–American jurisprudence, see Louis L. Jaffe, *1 Suits Against Governments and Officers: Sovereign Immunity,* 77 Harv. L.Rev. 1 (1963).

private action should therefore lie for the breach of any duty by any agency or instrumentality of the State. Under that analysis, in the absence of immunities and other defenses unique to the status of a prospective defendant as an instrument of government, a private suit might lie against the Legislature—if not legislators—for any number of real or imagined deficiencies in legislation, appropriations, or other actions, or against the courts—if not the judges and other quasi-judicial officers—for any negligence alleged in the judicial processes and against a variety of public offices, agencies, or instrumentalities, so long as the alleged wrong is covered by insurance and not expressly excluded by the terms of the policy or policies.

*Parkulo v. West Virginia Board of Probation and Parole,* 199 W.Va. 161, 170, 483 S.E.2d 507, 516 (1996).

However, when the state is not producing the will of the people, but is simply acting, as any private party would act, the immunity makes less sense. When the state or one of its subdivisions is unloading a steamroller (*White v. Berryman,* 187 W.Va. 323, 418 S.E.2d 917 (1992)), failing to maintain an elevator (*Pittsburgh Elevator v. W.Va. Board of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983)), or parking a police car in the in middle of the road over the crest of a hill (*Westfall v. City of Dunbar,* 205 W.Va. 246, 517 S.E.2d 479 (1999)), it makes little sense to treat the state differently than any private individual.

In each of those cases, the plaintiff was able to recover based upon the "insurance exception" in our law. We have made many other such exceptions to sovereign immunity:

Nevertheless, over the years this Court has carved exceptions from the prohibition against suing the State. "The facial absoluteness of Section 35 ... has not prevented this Court from recognizing several contexts in which litigation may go forward even though the State government—and sometimes, even, the State treasury—could be seriously affected by the outcome of the litigation." *Gribben v. Kirk,* 195 W.Va. 488, 493, 466 S.E.2d 147, 152 (1995).

These exceptions include injunctions to restrain or require State officers to perform ministerial duties, *C & O R'y Co. v. Miller, Auditor,* 19 W.Va. 408 (1882), aff'd, 114 U.S. 176, 5 S.Ct. 813, 29 L.Ed. 121 (1885); suits against State officers acting or threatening to act, under allegedly unconstitutional statutes, *Blue Jacket Consol. Copper. v. Scherr,* 50 W.Va. 533, 40 S.E. 514 (1901); recognition of a moral obligation by the State, *State ex rel. Davis Trust Co. v. Sims,* 130 W.Va. 623, 46 S.E.2d 90 (1947); counterclaims growing out of transactions wherein the State institutes actions at law against a citizen, *State v. Ruthbell Coal Co.,* 133 W.Va. 319, 56 S.E.2d 549 (1949); suits for declaratory judgment, *Douglass v. Koontz,* 137 W.Va. 345, 71 S.E.2d 319 (1952); mandamus relief to require the State Road Commission to institute proper condemnation proceedings upon the taking or damaging of land for public purposes, *Stewart v. State Road Commission of West Virginia,* 117 W.Va. 352, 185 S.E. 567 (1936); suits alleging liability arising from the State's performance of proprietary functions, *Ward v. County Court of Raleigh County,* 141 W.Va. 730, 93 S.E.2d 44 (1956); suits against quasi-public corporations which have no taxing power or dependency upon the State for financial support, *Hope Natural Gas v. West Virginia Turn. Com'n,* 143 W.Va. 913, 105 S.E.2d 630 (1958); mandamus relief to compel State officers, who have acted arbitrarily, capriciously or outside the law, to perform their lawful duties, *State ex rel. Ritchie v. Triplett,* 160 W.Va. 599, 236 S.E.2d 474 (1977); suits in which constitutional immunity is superseded by federal law, *Kerns v. Bucklew,* 178 W.Va. 68, 357 S.E.2d 750 (1987); suits that seek recovery under and up to the limits of the State's liability insurance coverage, *Pittsburgh Elevator v. W. Va. Bd. of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983); and suits by state employees seeking an award of back wages which is prospective in nature, *Gribben v. Kirk,* 195 W.Va. 488, 466 S.E.2d 147 (1995).

*University of West Virginia Bd. of Trustees ex rel. West Virginia University v. Graf,* 205 W.Va. 118, 122–23, 516 S.E.2d 741, 745–46

(1998)(*per curiam*). This list suggests that the exceptions may be in the process of swallowing the rule. As my colleague stated in his dissent to the same case: "Someday, I think, a number of thorny sovereign immunity issues should and will be more thoroughly addressed by this Court. My sense is that our sovereign immunity jurisprudence has come to be—from a theoretical or academic perspective—fairly confused." *Id.* 205 W.Va. at 124, 516 S.E.2d 741 at 747 (Starcher, J., dissenting).

Because the majority failed to either address this confusion, or, in the alternative, require the Court of Claims to reconsider the merits of Ms. McLaughlin's claim, I must respectfully dissent.