357 S.E.2d 750

**Laura KERNS and the West Virginia Human Rights Commission**

v.

**Neil BUCKLEW, President, West Virginia University, and the West Virginia Board of Regents.**

No. 17493.

Supreme Court of Appeals of West Virginia.

May 15, 1987.

Regina L. Charon, Morgantown, for appellant.

Charles Brown, Atty. Gen., Silas Taylor, Dist. Atty. Gen., for appellee.

McIntyre, Haviland & Jordan, Webster J. Arceneaux, III, Charleston, for AFSCME.

Barbara J. Fleischauer, Morgantown, for NOW.

McHUGH, Justice:

In this original proceeding the petitioners, Laura Kerns and the West Virginia Human Rights Commission, seek a writ of mandamus compelling the respondents, the President of West Virginia University and the West Virginia Board of Regents, to pay Ms. Kerns the damages that were awarded to her by the West Virginia Human Rights Commission as the result of the Commission's finding of employment discrimination by the respondents' agents against Ms. Kerns on the basis of her sex. The respondents assert that they are immune from liability for the employment discrimination damages by virtue of state constitutional governmental immunity. They argue that Ms. Kerns should seek to enforce the Commission's monetary award by seeking a recommendation of a moral obligation in the West Virginia Court of Claims and funding of the same by the legislature. We hold that state constitutional governmental immunity is superseded in this case by federal constitutional protection against employment discrimination. Accordingly, we grant the writ of mandamus.

I

On May 30, 1978, the petitioner Laura Kerns submitted an application for employment with the West Virginia University Cooperative Extension Service, seeking employment in agriculture and community development, as an extension agent or an associate extension agent. At all times relevant to this proceeding, the West Virgi-

nia University Cooperative Extension Service has been a division of the West Virginia University Center for Continuing Education and has been under the ultimate control of the · respondent President of West Virginia University and the respondent West Virginia Board of Regents.

At the time that Laura Kerns submitted her application for employment, she had completed both a bachelor of science degree in wildlife and fisheries management and a master's degree in agriculture, in the School of Agriculture and Forestry at West Virginia University, and had employment experience related to the positions she sought.

After Laura Kerns submitted her application for employment, there were a number of vacancies for extension agents and associate extension agents, in agriculture and community development; however, Laura Kerns was notified that she would not be hired for any of the positions she sought. She later learned that each of the positions had been filled by a male applicant who had only a bachelor's degree and was no more qualified for the positions than she.

In March of 1979, Laura Kerns timely filed a complaint of employment discrimination with the West Virginia Human Rights Commission.[1]

After Laura Kerns had been denied employment with West Virginia University and had filed her complaint with the West Virginia Human Rights Commission, she continued to work at various jobs that paid less than the positions she had sought at West Virginia University. These jobs, in her opinion, did not offer as great a degree of professional fulfillment as would the positions at West Virginia University. Laura Kerns also completed additional schooling to qualify for a position as a high school teacher. She has been employed as a high school teacher on a full-time basis for several years.

After over six years of administrative agency delay, Ms. Kerns' complaint was brought on for hearing. In September and October of 1985, a hearing examiner for the West Virginia Human Rights Commission held a hearing on Laura Kerns' complaint. The evidence adduced at the hearing indicated that, in 1978, respondents employed fifty-three males and one female as agricultural extension agents. By 1985, these numbers had changed little: fifty males and two females were employed as agricultural extension agents throughout the State. In contrast, in 1978, forty-four females and no males were employed as home economics extension agents throughout the State, and by 1985, forty-seven females and no males were employed in that job capacity.

Following this hearing, the hearing examiner, on December 9, 1985, issued a recommended decision, which included detailed findings of fact and conclusions of law and a determination that Laura Kerns had been discriminated against in employment on the basis of her sex by the West Virginia University Cooperative Extension Service. The recommended decision of the hearing examiner found that Laura Kerns was entitled to back pay in the stipulated amount of $23,242.98; costs of further education in the amount of $1,740.50; damages for humiliation, embarrassment, emotional and mental distress, and loss of personal dignity in the amount of $1,000.00;[2] and reason-

---

1. "It shall be an unlawful discriminatory practice ... (a) For any employer to discriminate against an individual with respect to ... hire, ... if the individual is able and competent to perform the services required...." *W.Va.Code,* 5–11–9(a), as amended. "The term 'employer' means the state, or any political subdivision thereof, ..." *W.Va.Code,* 5–11–3(d), as amended. "The term 'discriminate' or 'discrimination' means to exclude from, or fail or refuse to extend to, a person equal opportunities [e.g., in employment] because of ... [his or her] sex, ..." *W.Va.Code,* 5–11–3(h), as amended. Any complaint filed with the West Virginia Human Rights Commission must be filed within 90 days after the alleged act of discrimination. *W.Va. Code,* 5–11–10, as amended.

2. "The West Virginia Human Rights Commission as part of its cease and desist orders may award to complainant incidental damages as compensation for humiliation, embarrassment, emotional and mental distress, and loss of personal dignity, without proof of monetary loss. *W.Va.Code,* 5–11–8 [ (d)(6), *W.Va.Code,* 5–11–8(h) and *W.Va.Code,* 5–11–10, each as amend-

able attorney's fees and costs, in the amount of $18,193.45.

On March 11, 1986, the West Virginia Human Rights Commission reviewed the findings of fact and conclusions of law submitted by the hearing examiner and adopted these findings and conclusions as its own, with two modifications: damages for back pay in the amount of $23,242.98 were amended by the addition of prejudgment interest at the rate of ten percent per year from September 15, 1978, to September 13, 1985, the date the hearing commenced; and damages for humiliation, embarrassment, emotional and mental distress, and loss of personal dignity were increased to $5,000.00. These modifications were set out in the order entered by the West Virginia Human Rights Commission on March 21, 1986.

The West Virginia University Cooperative Extension Service promptly requested reconsideration of the Commission's order. On September 11, 1986, the West Virginia Human Rights Commission issued an order denying the motion for reconsideration.

Pursuant to the pertinent portion of the State Administrative Procedures Act, *W.Va.Code*, 29A–5–4(b), as amended, the respondents herein had thirty days from receipt of the final order of the West Virginia Human Rights Commission to seek judicial review.[3] No appeal was ever filed by the respondents herein.

After receiving a negative reply from the respondents to a letter demanding payment of the West Virginia Human Rights Commission's employment discrimination award (totalling over $70,000, including interest on the back pay, in November, 1986), the petitioner, Laura Kerns, brought this mandamus proceeding to compel payment of the award. She also seeks recovery of reasonable attorney's fees incurred in this proceeding. The West Virginia Human Rights Commission joined in this proceeding to preserve the integrity of its orders.[4]

In addition to the briefs of the parties, we have reviewed the briefs of amici curiae, namely, the National Organization for Women, the National Association for the Advancement of Colored People, the Mountain State Bar Association, the National Lawyers Guild and the American Federation of State, County and Municipal Employees.

## II

### A.

*W. Va. Const.* art. VI, § 35 provides: "The State of West Virginia shall never be made defendant in any court of law or equity, . . ." In syllabus point 2 of *Ables v. Mooney,* 164 W.Va. 19, 264 S.E.2d 424 (1979), this Court recognized that this state constitutional provision protects the fiscal integrity of the State:

In certain instances a suit may be maintained against a State official in his individual capacity, notwithstanding the constitutional immunity provision found in Article VI, Section 35 of the West Virginia Constitution, where the relief sought involves a prospective declaration of the parties' rights. However, where the relief sought involves an attempt to obtain a retroactive monetary recovery against the official based on his prior acts and which recovery is payable from State funds, the constitutional immunity

ed]." Syl., *State Human Rights Commission v. Pearlman Realty Agency,* 161 W.Va. 1, 239 S.E.2d 145 (1977). *Accord,* syl. pt. 6, *State ex rel. State Human Rights Commission v. Logan-Mingo Area Mental Health Agency, Inc.,* 174 W.Va. 711, 329 S.E.2d 77 (1985).

**3.** The provisions of the State Administrative Procedures Act on contested cases, *W.Va.Code,* 29A–5–1 to 29A–5–5, as amended, govern (with one exception relating to the advance notice of hearing) the administrative procedures in and judicial review of state human rights cases initiated by filing a complaint with the West Virginia Human Rights Commission. *W.Va.Code,* 5–11–10, as amended.

**4.** The respondents have not challenged the propriety of the West Virginia Human Rights Commission's seeking mandamus relief in this proceeding to enforce its order. See *W.Va.Code,* 5–11–11, as amended, for provisions on the Commission's filing a petition in circuit court for enforcement of its cease and desist orders.

provision bars such relief.[5]

That the primary purpose of this state constitutional provision is to prevent the diversion of state money from legislatively appropriated purposes to the payment of court awards is apparent also in syllabus point 2 of *Pittsburgh Elevator Co. v. West Virginia Board of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983): "Suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State."[6]

The immunity from suits provided to the State by the *Constitution of West Virginia* is to be distinguished from the common law doctrine of governmental immunity, which may be abrogated by the legislature or by this Court through its evolution of common law principles. *Ables v. Mooney*, 164 W.Va. 19, 25 n. 5, 264 S.E.2d 424, 428 n. 5 (1979). In Justice Miller's concurring opinion in *Pittsburgh Elevator Co. v. West Virginia Board of Regents*, 172 W.Va. 743, 759, 310 S.E.2d 675, 691 (1983), it was observed that no court has judicially abolished sovereign immunity set by the state constitution.

## B.

■ Nonetheless, the provisions of the *Constitution of the United States* also govern the people of this State, and such provisions, under the supremacy clause, override any contrary state constitutional or statutory law providing less protection or relief than provided by the Federal *Constitution* or federal statutes: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof;

... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." *U.S. Const.*, art. VI, cl. 2 ("the supremacy clause").

■ In addition to the overriding effect of the supremacy clause of the *Constitution of the United States* (art. VI, cl. 2) upon contrary state law, federal legislation which is expressly authorized by section 5 of the fourteenth amendment to the *Constitution of the United States* and which implements such amendment will by its own force override contrary state constitutional or statutory law, such as governmental immunity (*W. Va. Const.* art. VI, § 35), which state law provides less protection or relief than provided by the fourteenth amendment and its implementing legislation, such as the Equal Employment Opportunity Act of 1972, as amended, 42 *U.S.C.* §§ 2000e to 2000e–17 (1982). For example, in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court of the United States held that under the fourteenth amendment provision empowering Congress to enforce the amendment by appropriate legislation, Congress was authorized to make states liable in federal courts for damages, including back pay and reasonable attorney's fees, resulting from unlawful employment discrimination by the states as employers. It was held that the state sovereignty principle of the eleventh amendment does not bar retroactive monetary awards in employment discrimination cases because the fourteenth amendment by its terms restricts a state's sovereign powers and enlarges Congress' powers in cases involving the fourteenth amendment.[7] Under section

5. *Ables v. Mooney*, denying back pay to certain public employees, and civil service cases awarding back pay to public employees, such as *American Federation of State, County & Municipal Employees v. CSC*, 176 W.Va. 73, 79, 341 S.E.2d 693, 699 (1985), involve state statutory entitlements. This case involves federal constitutional entitlements.

6. This Court recently held that a sophisticated commercial entity's breach of contract action against the State was barred by *W. Va. Const.*

art. VI, § 35. *See* syl. pts. 2–3, *G.M. McCrossin, Inc. v. West Virginia Board of Regents*, 177 W.Va. 539, 355 S.E.2d 32 (1987).

7. Section 1 of the fourteenth amendment to the *Constitution of the United States* provides:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State where they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the

5 of the fourteenth amendment Congress, in enacting legislation to enforce such amendment, is authorized to abrogate a state's immunity from suit by a citizen in a federal court, which immunity is conferred by the eleventh amendment.[8] "Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614, 622 (1976).

In *Fitzpatrick* a class action was brought in a federal district court on behalf of all current and retired male employees of the State of Connecticut. The plaintiffs in the action alleged that certain provisions of that state's statutory retirement benefit plan for public employees discriminated against the plaintiffs because of their sex, in violation of the Equal Employment Opportunity Act of 1972, as amended. The district court ruled in favor of the male employees and ordered prospective injunctive relief against the state officials. On the other hand, the district court, on the basis of the eleventh amendment and case

law thereunder, denied an award of retroactive retirement benefits and reasonable attorney's fees. The Supreme Court of the United States allowed recovery of both the back pay and the reasonable attorney's fees. Noting that state governments were included in the Equal Employment Opportunity Act's definition of a covered "person" (and "employer"), 42 *U.S.C.* § 2000e(a)-(b) (1982), the Supreme Court of the United States upheld Congress' exercise of fourteenth amendment power by authorizing—even against the states—awards of back pay, 42 *U.S.C.* § 2000e-5(g) (1982), and reasonable attorney's fees, 42 *U.S.C.* § 2000e-5(k) (1982), in employment discrimination cases in the federal courts.

A case discussing the interrelated and complementary state and federal enforcement scheme in employment discrimination cases is *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), involving employment discrimination (refusal to hire) on the basis of the complainant's race. Reviewing the legislative history and the text of the Equal Employment Opportunity Act of 1972, as amended, the Supreme Court of the United States in *Carey* recognized Congressional

---

United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 5 of the fourteenth amendment provides: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this [amendment]."

The eleventh amendment to the *Constitution of the United States* provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This amendment has been held to preclude, in most types of cases, a suit in a federal court by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

**8.** Referring to precedents of the Supreme Court of the United States recognizing a shift in the federal-state balance of powers after the Civil War, *Fitzpatrick* contains these remarks:

There can be no doubt that this line of cases has sanctioned intrusions by Congress, acting under the Civil War Amendments [the thir-

teenth, fourteenth and fifteenth amendments], into the judicial, executive, and legislative spheres of autonomy previously reserved to the States. The legislation considered in each case was grounded on the expansion of Congress' powers—with the corresponding diminution of state sovereignty—found to be intended by the Framers and made part of the Constitution upon the States' ratification of those Amendments, ...

... [T]he Eleventh Amendment, and the principle of state sovereignty which it embodies, [citation omitted], are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment. In that section Congress is expressly granted authority to enforce 'by appropriate legislation' the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority. When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority.

427 U.S. at 455–56, 96 S.Ct. at 2671, 49 L.Ed.2d at 621–22.

policy that the federal and state (and local) governments are to coordinate their efforts and to cooperate in remedying employment discrimination.

Pursuant to this policy of cooperation, such Act provides that where the unlawful employment practice is alleged to have occurred in a state or a political subdivision thereof which has a law prohibiting the practice and in which jurisdiction an agency has been established to enforce that law, no charge may be filed with the Equal Employment Opportunity Commission ("EEOC") by the aggrieved person before the expiration of sixty days after proceedings have been commenced under the state or local law, unless such proceedings have been earlier terminated. 42 *U.S.C.* § 2000e–5(c) (1982). This statute has resulted in the EEOC's development of a referral and deferral system. When a charge is filed improperly with the EEOC prior to resort to available state or local remedies, the EEOC refers the complaint to the appropriate state or local enforcement agency. The EEOC then holds the complaint in suspension. Upon termination of the state or local proceedings, or upon expiration of the sixty-day deferral period, whichever comes first, the EEOC automatically assumes concurrent jurisdiction of the complaint.

After waiting, normally, 240 days (60 days for deferral to the state or local agency plus 180 days for the EEOC, or the Attorney General of the United States in a case involving a governmental respondent, to act after the deferral period expires), the complainant may bring a civil action in a federal district court. The federal district court may stay the federal action for a maximum of sixty more days, to permit completion of state or local proceedings. 42 *U.S.C.* § 2000e–5(f)(1) (1982).[9]

After discussing this joint state/federal enforcement scheme in employment discrimination cases, the Supreme Court of the United States in *Carey* stated:

It is clear from this scheme of interrelated and complementary state and federal enforcement that Congress viewed proceedings before the EEOC and in federal court as supplements to available state remedies for employment discrimination. Initial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief.

447 U.S. at 65, 100 S.Ct. at 2031–32, 64 L.Ed.2d at 735. Again, the Equal Employment Opportunity Act of 1972, as amended, "explicitly leaves the States free, and indeed encourages them, to exercise their regulatory power over discriminatory employment practices. [Such Act] merely provides a supplemental right to sue in federal court if satisfactory relief is not obtained in state forums." 447 U.S. at 67, 100 S.Ct. at 2033, 64 L.Ed.2d at 736.

In *Carey* the question presented was whether a complainant who prevails on the merits in an employment discrimination case in state administrative and judicial proceedings may recover reasonable attorney's fees—incurred in such state proceedings—in an action in a federal district court, even though the state's human rights law does not authorize recovery of reasonable attorney's fees in state administrative or judicial proceedings. The Supreme Court of the United States held in the affirmative.

The court relied first upon the broadly inclusive language of 42 *U.S.C.* § 2000e–5(k) (1982): "In *any* action *or proceeding* under this title the court, in its discretion,

---

**9.** A federal district court is authorized to enjoin an unlawful employment practice and to grant affirmative relief, including reinstatement or hiring, with or without back pay which has accrued within two years of the filing of the charge with the EEOC. 42 *U.S.C.* § 2000e–5(g) (1982).

This two-year limitation on back pay is not contained in *W.Va.Code,* 5–11–10 [1971], which, in addition to authorizing a cease and desist

order, authorizes affirmative relief, "including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, ..." Nothing in the Equal Employment Opportunity Act of 1972, as amended, "shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any state or political subdivision of a State, ..." 42 *U.S.C.* § 2000e–7 (1982).

may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee as part of the costs." (emphasis added)[10] The court concluded that the word "proceeding" "refer[s] to all the different types of proceedings in which the statute is enforced, state and federal, administrative and judicial." 447 U.S. at 62–63, 100 S.Ct. at 2030, 64 L.Ed.2d at 733.

In holding that reasonable attorney's fees were recoverable in a federal action, the court also relied upon the fact that initial resort to available state and local remedies is *required* by the Equal Employment Opportunity Act, and the fact that resort to the federal forums is appropriate only when the state forums do not provide prompt or complete relief. The court then made this observation about incomplete relief in state forums which is pertinent here:

> One aspect of complete relief is an award of attorney's fees, which Congress considered necessary for the fulfillment of federal goals. Provision of a federal award of attorney's fees is not different from any other aspect of the ultimate

authority of federal courts to enforce [the Equal Employment Opportunity Act]. For example, if state proceedings result in an injunction in favor of the complainant, but no award for backpay because state law does not authorize it, the complainant may proceed in federal court to 'supplement' the state remedy. The state law which fails to authorize backpay has not been [in one sense] pre-empted [but "supplemented"]. In any event, if it can be said that [42 *U.S.C.* § 2000e–5(k) (1982)] pre-empts the state rule, we believe that Congress' intent to achieve this result is manifest.

447 U.S. at 67–68, 100 S.Ct. at 2033, 64 L.Ed.2d at 736–37.

Finally, the court in *Carey* rejected the employer's argument that awarding reasonable attorney's fees in a federal action under the Equal Employment Opportunity Act for legal services performed in state employment discrimination proceedings, where the state does not authorize fee-recovery, would infringe upon the state's reserved powers under the tenth amend-

---

10. *W.Va.Code,* 5–11–10 [1971] does not specifically authorize the recovery of reasonable attorney's fees by the prevailing party in an employment (or other unlawful) discrimination case initiated by filing a complaint with the West Virginia Human Rights Commission. That section of the West Virginia Human Rights Act does, however, provide that affirmative relief, "including, but not limited to," certain specified items may be awarded by the West Virginia Human Rights Commission, "as in the judgment of the commission, will effectuate the purposes of" such Act. Under *W.Va.Code,* 5–11–8(h) [1977, 1981], the West Virginia Human Rights Commission is authorized "[t]o do all other acts and deeds necessary and proper to carry out and accomplish effectively the objects, functions and services contemplated by the provisions of this article, including the promulgation of rules and regulations ... implementing the powers and authority hereby vested in the commission[.]" The record in the proceeding now before this Court does not contain any of the rules and regulations promulgated by the West Virginia Human Rights Commission, such as any rules or regulations on recovery of reasonable attorney's fees. We note, however, that *W.Va. Code,* 5–11–13(c), as amended, specifically authorizes the recovery by a complainant of reasonable attorney's fees incurred in a successful civil action in a state circuit court to remedy unlawful discrimination. Such a civil action

may be brought as an alternative to filing a complaint with the West Virginia Human Rights Commission. Syl. pt. 1, *Price v. Boone County Ambulance Authority,* 175 W.Va. 676, 337 S.E.2d 913 (1985). It would be anomalous to permit recovery of reasonable attorney's fees in civil actions to remedy unlawful discrimination but not in the usual forum for remedying the same, namely, administrative proceedings.

The primary reason that *W.Va.Code,* 5–11–10 [1971] is silent on the recovery of reasonable attorney's fees incurred in proceedings before the West Virginia Human Rights Commission may be that such section provides that "[t]he [public's] case in support of the complaint [not "complainant"] shall be presented before the commission [after investigation and attempts at conciliation] by one of its attorneys or agents." Under a similar New York statute it has been held that the complainant also has the right to retain his or her own counsel to represent his or her own interests throughout the administrative proceedings (not just prior to the hearing). The interests of the complainant and of the state enforcement agency are not coextensive and may be adverse at different stages of the administrative proceedings; furthermore, the complainant is not the client of the agency's attorney. *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 70, 100 S.Ct. 2024, 2034, 64 L.Ed.2d 723, 738 (1980).

ment to the *Constitution of the United States*. "Congress' power under § 5 of the Fourteenth Amendment is broad, and overrides any interest the State might have in not authorizing awards for fees in connection with state proceedings." 447 U.S. at 67, 100 S.Ct. at 2032, 64 L.Ed.2d at 736.

## C.

■■■ It is readily apparent that *Fitzpatrick v. Bitzer* and *New York Gaslight Club, Inc. v. Carey* permit affirmative relief, such as an award of back pay and reasonable attorney's fees, in civil actions in *federal* courts under the Equal Employment Opportunity Act of 1972, as amended, where such relief, under state law (such as governmental immunity), is not obtainable in state administrative or judicial proceedings. We hold that affirmative relief, such as an award of back pay and reasonable attorney's fees, is recoverable against the State of West Virginia as an employer in employment discrimination cases adjudicated before the West Virginia Human Rights Commission or in the court system of this State, as well as being recoverable in actions or proceedings in federal forums, state constitutional governmental immunity notwithstanding. In employment discrimination cases the federal law, which is paramount, is intended by the fourteenth amendment and Congress to "be vindicated at the state or local level." *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 66, 100 S.Ct. 2024, 2032, 64 L.Ed.2d 723, 735 (1980). Under the supremacy clause of the *Constitution of the United States,* the defense of state constitutional governmental immunity is not available in actions or proceedings under the West Virginia Human Rights Act because that statute is part of a joint state/federal scheme to enforce the fourteenth amendment to the *Constitution of the United States,* and the State would ultimately be liable in a federal forum under federal law. *Cf. State v. Kopa,* 173 W.Va. 43, 49, 311 S.E.2d 412, 418 (1983) (this Court deferred to the opinion of the United States Court of Appeals for the Fourth Circuit regarding the unconstitutionality of an alibi instruction because our "sustaining convictions in the state

court [would lead to] predictable release through habeas corpus in the federal court."); *see generally* Wolcher, *Sovereign Immunity and the Supremacy Clause: Damages Against States in Their Own Courts for Constitutional Violations,* 69 Calif.L.Rev. 189 (1981) (state courts have the obligation under the supremacy clause to cast aside their state constitutional, common law or statutory governmental immunity in certain types of cases involving federal constitutional entitlements).

## D.

■■ There are two other points which merit brief discussion. First, we reject the respondents' contention that an award of "back pay" was not appropriate here because Ms. Kerns was not hired and, consequently, there never was in fact an employee/employer relationship, a predicate for a "back pay" award. Obviously, a person who unlawfully discriminates against another person by refusing to hire that person will not be permitted to deny an employee/employer relationship, and the compensation for the personal services which would have been rendered had the person been hired constitutes "back pay" within the meaning of the West Virginia Human Rights Act. *See New York Gaslight Club, Inc. v. Carey, supra* (back pay awarded for employment discrimination by refusing to hire); *Drennan v. Department of Health,* 163 W.Va. 185, 192, 255 S.E.2d 548, 552 (1979) (back pay awarded under State Civil Service Act for unlawful refusal to hire for political reasons).

Another point meriting brief discussion is the propriety of the award for reasonable attorney's fees incurred in the employment discrimination proceeding before the West Virginia Human Rights Commission. In *Allen v. State Human Rights Commission,* 174 W.Va. 139, 161–62 n. 28, 324 S.E.2d 99, 122 n. 28 (1984), we noted that the Attorney General of this State is to furnish legal services, including full-time staff attorneys, to the West Virginia Human Rights Commission at no cost. The petition and briefs in this original proceeding in mandamus indicate that the attorney

representing Ms. Kerns is also acting in this mandamus proceeding as a special assistant attorney general for the West Virginia Human Rights Commission. The record is not clear, but we will assume that the Commission was represented by its own attorney during the administrative proceeding. We will also assume that the attorney's fees awarded by the Commission were for legal representation of Ms. Kerns, not for legal representation of the Commission.[11]

█ For the reasons stated in this opinion, we grant the writ of mandamus, including recovery of reasonable attorney's fees incurred by Ms. Kerns in this mandamus proceeding.

Writ granted.

---

**11.** We need not address the propriety of a "special" assistant attorney general's representing one of the petitioners in this mandamus proceeding, while a deputy attorney general is representing the respondents herein. One of the petitioners is a private litigant, and the predominant purpose of this proceeding is to provide relief to the private litigant.