# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

Nos. 23-ICA-127 & 23-ICA-135

_____

**FILED**

**June 13, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

BRIAN CUNNINGHAM, in his capacity as Director of the Public Employees Insurance Agency and MARK D. SCOTT, GEOFF S. CHRISTIAN, AMANDA D. MEADOWS, JARED ROBERTSON, DAMITA JOHNSON, JASON MYERS, MICHAEL COOK, WILLIAM MILAM, and MICHAEL T. SMITH, in their capacities as Members of the Public Employees Insurance Agency Finance Board,
Respondents Below, Petitioners

v.)  No. 23-ICA-127

AIR EVAC EMS, INC.,
Petitioner Below, Respondent

_____

AND

_____

AIR EVAC EMS, INC.,
Petitioner Below, Petitioner

v.)  No. 23-ICA-135

BRIAN CUNNINGHAM, in his capacity as Director of the Public Employees Insurance Agency and MARK D. SCOTT, GEOFF S. CHRISTIAN, AMANDA D. MEADOWS, JARED ROBERTSON, DAMITA JOHNSON, JASON MYERS, MICHAEL COOK, WILLIAM MILAM, and MICHAEL T. SMITH, in their capacities as Members of the Public Employees Insurance Agency Finance Board,
Respondents Below, Respondents

_____

Appeal from the Circuit Court of Kanawha County
Honorable Carrie L. Webster, Judge
Civil Action No. 19-AA-169

REVERSED AND REMANDED
_____

Submitted: February 6, 2024
Filed: June 13, 2024

Michael R. Williams, Esq.                        Carte P. Goodwin, Esq.
Deputy Solicitor General                         Alex J. Zurbuch, Esq.
Sean M. Whelan, Esq.                             Mary Claire Davis, Esq.
Deputy Attorney General                          FROST BROWN TODD LLP
Charleston, West Virginia                        Charleston, West Virginia
Counsel for Petitioners                          Counsel for Respondent

JUDGE LORENSEN delivered the Opinion of the Court.

CHIEF JUDGE SCARR dissents and reserves the right to file a separate opinion.

JUDGE GREEAR voluntarily recused.

JUDGE ROBERT E. RYAN sitting by temporary assignment.

LORENSEN, JUDGE:

This consolidated matter arises from Air Evac EMS, Inc.'s ("Air Evac") attempts to collect additional payment for providing air ambulance transports to individuals insured by the West Virginia Public Employees Insurance Agency ("PEIA")[1] over three years.[2] Both parties appeal the December 16, 2022, order of the Circuit Court of Kanawha County, which held that: (1) PEIA is not entitled to sovereign immunity against Air Evac's claims; (2) the payment dispute between Air Evac and PEIA was subject to the Administrative Procedures Act ("APA") and Contested Case Rules ("CCR"); (3) pursuant to the CCR, Air Evac is entitled to a contested hearing on the merits of its demand for additional payments from PEIA; and (4) on remand, PEIA and Air Evac were ordered to negotiate a fair price before pursuing further administrative proceedings, concluding it was improper to set reimbursement at either the Medicare Rural Rate or Air Evac's "full billed" charges.

On review, we hold that the circuit court erred in concluding that sovereign immunity did not bar Air Evac's claim for damages against PEIA. Therefore, we reverse the circuit court's December 16, 2022, Final Order Granting, in Part and Denying, in Part

---

[1] Since the filing of this consolidated appeal, Brian Cunningham was appointed as Director of the Public Employees Insurance Agency. Accordingly, by order dated February 1, 2024, this Court made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[2] The transports at issue occurred between June 9, 2016, and June 4, 2019.

1

Air Evac EMS, Inc.'s Petition for Appeal and remand this matter to be dismissed with prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This action follows extensive federal litigation that resulted in PEIA's air ambulance reimbursement rate caps being found to be preempted by federal law.[3] As relevant context, we provide a brief overview of the federal litigation. On June 9, 2016, Air Evac initiated an action in the United States District Court for the Southern District of West Virginia, seeking a declaratory judgment that PEIA's reimbursement rate caps[4] were preempted by the federal Airline Deregulation Act ("ADA"). *See Cheatham II*, 2017 WL 4765966, at *1, 10. The rate cap provisions limited PEIA's reimbursement rates for air ambulance providers to either the Medicare Rural Rate or the annual cost of an air ambulance provider's membership program—both being rates below Air Evac's "full-billed" charges. *See id.* at *1. At summary judgment, the district court found that the ADA preempted the provisions, and enjoined PEIA from enforcing the reimbursement caps. *Id.*

---

[3] *See Air Evac EMS, Inc. v. Cheatham* (*Cheatham I*), 260 F. Supp. 3d 628, 633 (S.D.W. Va. 2017); *Air Evac EMS, Inc. v. Cheatham* (*Cheatham II*), No. 2:16-cv-05224, 2017 WL 4765966, at *1 (S.D.W. Va. Oct. 20, 2017), *aff'd*, 910 F.3d 751 (4th Cir. 2018); *Air Evac EMS, Inc. v. Cheatham* (*Cheatham III*), 910 F.3d 751, 759 (4th Cir. 2018); *see also* W. Va. Code §§ 5-16-8a(a)–(b) (2016) (amended 2019), 5-16-5(c)(1) (2007) (amended 2023).

[4] *See* W. Va. Code §§ 5-16-8a(a)–(b) (2016) (amended 2019), 5-16-5(c)(1) (2007) (amended 2023).

During PEIA's appeal of the district court's decision, Air Evac sent written demands to PEIA, asserting that, in light of the injunction, PEIA was now obligated to pay its "full billed" charges for air transports it had provided since initiating the federal litigation. PEIA refused, arguing that it was not mandated to "unquestionably pay whatever amount Air Evac unilaterally establishes as its charge" and maintaining that it had discretion to negotiate. Instead, PEIA offered to pay a portion of Air Evac's billed charges at the Medicare Rural Rate, which Air Evac accepted, considering it partial compensation.[5]

Before the United States Court of Appeals for the Fourth Circuit, the district court's decision was affirmed in full, and the Fourth Circuit agreed that PEIA's rate capping provisions were preempted by the ADA. *See Cheatham III*, 910 F.3d 751, 755. Once the Fourth Circuit had issued its ruling, a second exchange of demands and refusals began. Over the summer of 2019, the parties continued to dispute whether PEIA had an obligation to further compensate Air Evac. Eventually, the parties reached an impasse, and on October 24, 2019, Air Evac demanded a contested case hearing before the PEIA Board regarding the disputed charges. In response, on November 13, 2019, PEIA declined to schedule a hearing, asserting that Air Evac's demand was exempt from APA procedures, and therefore not subject to the CCR.[6]

---

[5] PEIA paid $754,988.00 of Air Evac's $4,773,034.00 "full billed" charges.

[6] *See* W. Va. Code R. §§ 151-1-1 *et seq*.

3

Construing PEIA's response as a summary denial, on December 13, 2019, Air Evac appealed PEIA's decision to the Circuit Court of Kanawha County. There, Air Evac sought a declaration that it was entitled to a contested hearing under the APA, and further, sought the circuit court to order PEIA to pay the remaining balance of $4,018,046 for the 115 transports it provided to PEIA members between June 9, 2016, and June 4, 2019. In support, Air Evac claimed that, in light of the federal injunction modifying the reimbursement statutes,[7] severability principles now mandated PEIA to pay Air Evac's "full billed" charges. Further, Air Evac contended that PEIA's refusal to budge from the Medicare Rural Rate—the same rate PEIA would have previously paid under the now-enjoined rate caps—amounted to ignoring the federal injunction.

In response, PEIA, citing its own regulations, maintained that the APA was inapplicable because this matter constituted a provider payment dispute, and as such, it was exempt from APA procedures.[8] Further, addressing severability, PEIA contended that the remaining statutory language would not amount to a mandate for PEIA to pay whatever price Air Evac demanded. PEIA also raised an issue of its own challenging the circuit court's jurisdiction by invoking sovereign immunity as a defense.

---

[7] *See Cheatham III*, 910 F.3d 751, 759; *see also* W. Va. Code §§ 5-16-8a(a)–(b) (2016) (amended 2019), 5-16-5(c)(1) (2007) (amended 2023).

[8] *See* W. Va. Code R. §§ 151-1-1 *et seq*.

On December 16, 2022, the circuit court issued its Final Order Granting, in Part and Denying, in Part Air Evac EMS, Inc.'s Petition for Appeal. The circuit court concluded that PEIA was not entitled to sovereign immunity, as Air Evac was seeking recovery from legislatively appropriated funds. Specifically, the funds sought were, in part, appropriated to PEIA for the purpose of satisfying payments like the medical transports at issue, placing Air Evac's claim within an exception to PEIA's sovereign immunity. Further, the circuit court determined that this matter was subject to APA procedures and PEIA's Contested Case Rules. Regarding the disputed payments, the circuit court reasoned that PEIA's decision to reimburse Air Evac at the Medicare Rural Rate failed to comply with the Fourth Circuit's mandate in *Cheatham III*; however, the circuit court also rejected Air Evac's assertions that it was entitled to payment of its "fully billed" charges. Instead, the circuit court ordered the parties to engage in good faith negotiations regarding the disputed charges, and if no resolution materialized, for further proceedings pursuant to the APA and CCR.[9] It is from this order both parties appeal.

---

[9] The circuit court also rejected PEIA's contention that, pursuant to its authority under West Virginia Code § 5-16-3(c) (2013), it had retroactively lifted the ban on balance-billing for the transports in question, which would permit Air Evac to recover any unpaid balance from PEIA members.

## II. STANDARD OF REVIEW

When reviewing a question of sovereign immunity, our standard of review[10] is as follows:

> [The Supreme Court of Appeals of West Virginia] has held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Further, "[a]s jurisdictional issues are questions of law, our review is de novo."

*Holley v. Feagley*, 242 W. Va. 240, 242, 834 S.E.2d 536, 538 (2019) (footnotes omitted) (first quoting Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995); and then quoting *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 343, 801 S.E.2d 216, 221 (2017)).

## III. DISCUSSION

At the outset, we address our jurisdiction. Our jurisdiction stems from the circuit court's denial of PEIA's sovereign immunity defense. We consider the circuit court's order to be an appealable order on the issue of sovereign immunity:

> "[A] circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Likewise, when the issue relates to sovereign immunity, it is well-settled that "the denial of a substantial

---

[10] The parties dispute whether this matter is properly subject to judicial review as a contested case pursuant to the Administrative Procedures Act. In such cases, a specific statutory standard of review is to be applied. *See* W. Va. Code § 29A-5-4(g) (2021). However, because we dispose of this case on sovereign immunity grounds, we decline to apply the standards of review applicable to the other assignments of error raised by the parties.

claim of absolute immunity is an order appealable before final judgment[.]"

*W. Virginia Lottery v. A-1 Amusement, Inc.*, 240 W. Va. 89, 94, 807 S.E.2d 760, 765 (2017) (second alteration in original) (first quoting *W. Virginia Bd. of Educ. v. Marple*, 236 W. Va. 654, 660, 783 S.E.2d 75, 81 (2015); and then quoting *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985)).[11] With our jurisdiction to review the circuit court's order established, we proceed to consider the principles of our sovereign immunity jurisprudence.

**A. Sovereign Immunity**

The State's sovereign immunity against suit is enshrined within Article VI, § 35 ("Section 35") of the West Virginia Constitution, which provides that: "The state of West Virginia shall never be made defendant in any court of law or equity . . . ." Accordingly, if applicable, sovereign immunity deprives a court of jurisdiction to hear the

---

[11] *See* W. Va. Code § 51-11-4(b)(1) (granting the Intermediate Court of Appeals jurisdiction over "[f]inal judgments or orders of a circuit court in all civil cases . . . entered after June 30, 2022 . . .").

case.[12] This immunity is "facially absolute[,]"[13] unwaivable,[14] and extends to agencies of the State.[15] The underlying purpose of sovereign immunity is "designed to protect the public purse"[16] from the "diversion of state money from legislatively appropriated purposes to the payment of court awards[.]"[17]

---

[12] *See* W. Va. Const. art. VI, § 35; *Arnold Agency v. W. Virginia Lottery Comm'n*, 206 W. Va. 583, 593, 526 S.E.2d 814, 824 (1999); *Skaff v. Pridemore*, 200 W. Va. 700, 704–05, 490 S.E.2d 787, 791–92 (1997) (per curiam); *Parkulo v. W. Virginia Bd. of Prob. & Parole*, 199 W. Va. 161, 167, 483 S.E.2d 507, 513 (1996).

[13] *Davari v. W. Virginia Univ. Bd. of Governors*, 245 W. Va. 95, 99, 857 S.E.2d 435, 439 (2021); *see also Gribben v. Kirk*, 195 W. Va. 488, 493, 466 S.E.2d 147, 152 (1995) (citations omitted) ("the constitutional grounding of the State's immunity is not judicially revocable"); *Mellon-Stuart Co. v. Hall*, 178 W. Va. 291, 296, 359 S.E.2d 124, 129 (1987) ("This constitutional grant of immunity is absolute and, as we have consistently held, cannot be waived by the legislature or any other instrumentality of the State.").

[14] *See Univ. of W. Virginia Bd. of Trustees ex rel. W. Virginia Univ. v. Graf*, 205 W. Va. 118, 121, 516 S.E.2d 741, 744 (1998); *Skaff v. Pridemore*, 200 W. Va. 700, 705–06, 490 S.E.2d 787, 792–93 (1997) (per curiam) ("[I]t is clear that 'the constitutional immunity of the State of West Virginia from suit by Article VI, Section 35 of the Constitution of this State can not be waived by the Legislature or any other instrumentality of the State.'") (quoting *Morgantown v. Ducker*, 153 W. Va. 121, 130, 168 S.E.2d 298, 303 (1969)).

[15] *See* Syl. Pt. 7, *Shaffer v. Stanley*, 215 W. Va. 58, 593 S.E.2d 629 (2003) (quoting Syl. Pt. 2, *Stewart v. State Road Comm'n*, 117 W. Va. 352, 185 S.E. 567 (1936)); *Parkulo v. W. Virginia Bd. of Prob. & Parole*, 199 W. Va. 161, 168, 483 S.E.2d 507, 514 (1996)).

[16] *Pittsburgh Elevator Co. v. W. Virginia Bd. of Regents*, 172 W. Va. 743, 756, 310 S.E.2d 675, 689 (1983).

[17] *Kerns v. Bucklew*, 178 W. Va. 68, 72, 357 S.E.2d 750, 754 (1987); *see also Mellon-Stuart Co. v. Hall*, 178 W. Va. 291, 296, 359 S.E.2d 124, 129 (1987).

Nevertheless, West Virginia law has recognized exceptions to this immunity.[18] In applying these exceptions, specific focus is placed on the nature of the relief

[18] In *Univ. of W. Virginia Bd. of Trustees ex rel. W. Virginia Univ. v. Graf*, 205 W. Va. 118, 122–23, 516 S.E.2d 741, 745–46 (1998), the Supreme Court of Appeals of West Virginia highlighted many such exceptions:

> These exceptions include injunctions to restrain or require State officers to perform ministerial duties, *C & O R'y Co. v. Miller, Auditor,* 19 W.Va. 408 (1882), *aff'd,* 114 U.S. 176, 5 S.Ct. 813, 29 L.Ed. 121 (1885); suits against State officers acting or threatening to act, under allegedly unconstitutional statutes, *Blue Jacket Consol. Copper. v. Scherr,* 50 W.Va. 533, 40 S.E. 514 (1901); recognition of a moral obligation by the State, *State ex rel. Davis Trust Co. v. Sims,* 130 W.Va. 623, 46 S.E.2d 90 (1947); counterclaims growing out of transactions wherein the State institutes actions at law against a citizen, *State v. Ruthbell Coal Co.,* 133 W.Va. 319, 56 S.E.2d 549 (1949); suits for declaratory judgment, *Douglass v. Koontz,* 137 W.Va. 345, 71 S.E.2d 319 (1952); mandamus relief to require the State Road Commission to institute proper condemnation proceedings upon the taking or damaging of land for public purposes, *Stewart v. State Road Commission of West Virginia,* 117 W.Va. 352, 185 S.E. 567 (1936); suits alleging liability arising from the State's performance of proprietary functions, *Ward v. County Court of Raleigh County,* 141 W.Va. 730, 93 S.E.2d 44 (1956); suits against quasi-public corporations which have no taxing power or dependency upon the State for financial support, *Hope Natural Gas v. West Virginia Turn. Com'n,* 143 W.Va. 913, 105 S.E.2d 630 (1958); mandamus relief to compel State officers, who have acted arbitrarily, capriciously or outside the law, to perform their lawful duties, *State ex rel. Ritchie v. Triplett,* 160 W.Va. 599, 236 S.E.2d 474 (1977); suits in which constitutional immunity is superseded by federal law, *Kerns v. Bucklew,* 178 W.Va. 68, 357 S.E.2d 750 (1987); suits that seek recovery under and up to the limits of the State's liability insurance coverage, *Pittsburgh Elevator v. W.Va. Bd. of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983); and suits by state employees seeking an award of back wages which is

sought. Accordingly, "where monetary relief is sought against the State treasury for which a proper legislative appropriation has not been made, sovereign immunity raises a bar to suit." *Davari v. W. Virginia Univ. Bd. of Governors*, 245 W. Va. 95, 102, 857 S.E.2d 435, 442 (2021) (citing *Mellon-Stuart Co. v. Hall*, 178 W. Va. 291, 296, 359 S.E.2d 124, 129 (1987)). Further, a distinction is drawn between requests for prospective and retroactive relief. "'[T]he sovereign immunity doctrine is implicated when retroactive money relief against the State is sought, but does not operate to bar an award which is prospective in nature.'" *Univ. of W. Virginia Bd. of Trustees ex rel. W. Virginia Univ. v. Graf*, 205 W. Va. 118, 121, 516 S.E.2d 741, 744 (1998) (quoting *Skaff v. Pridemore*, 200 W. Va. 700, 706, 490 S.E.2d 787, 793 (1997) (per curiam)).

Mindful of these principles, we consider the parties' arguments regarding the application of sovereign immunity to this matter.

## B. Application of Law

In No. 23-ICA-127, PEIA argues that the circuit court erred in declining to recognize its sovereign immunity. PEIA contends that the circuit court's reliance on *Mellon-Stuart Co. v. Hall*[19] creates a new, unrecognized, general "legislative appropriation" exception to sovereign immunity. Further, the circuit court violated a

---

prospective in nature, *Gribben v. Kirk,* 195 W.Va. 488, 466 S.E.2d 147 (1995).

[19] 178 W. Va. 291, 296, 359 S.E.2d 124, 129 (1987).

second sovereign immunity principle by not recognizing that Air Evac impermissibly seeks retroactive monetary relief—payment for its past transports—from the State in an administrative action and associated lawsuit filed in circuit court in late 2019. Conversely, Air Evac maintains that sovereign immunity is inapplicable for three reasons: (1) PEIA is not named as a "defendant" in this action within the meaning of Section 35 to trigger immunity; (2) pursuant to the circuit court's reading of *Mellon-Stuart*, Air Evac only seeks recovery from funds that have been legislatively appropriated for the purpose of compensating health care providers for their services; and (3) even if sovereign immunity is otherwise applicable, Air Evac's demand falls within the prospective relief exception to immunity because it only requests payment for transports made after the filing of the federal *Cheatham* litigation.[20]

---

[20] Simultaneously, in No. 23-ICA-135, Air Evac asserts a cross-assignment of error, arguing that, instead of ordering the parties to negotiate a mutually agreed reimbursement rate and undergo further administrative proceedings, the circuit court should have determined that it was entitled to reimbursement of its "full billed" charges.

While we recognize the other assignments of error raised in this consolidated appeal, because sovereign immunity presents a jurisdictional bar to the underlying claim, we decline to consider further issues. *See* W. Va. Const. art. VI, § 35; *Arnold Agency v. W. Virginia Lottery Comm'n*, 206 W. Va. 583, 593, 526 S.E.2d 814, 824 (1999); *Skaff v. Pridemore*, 200 W. Va. 700, 704–05, 490 S.E.2d 787, 791–92 (1997) (per curiam); *Parkulo v. W. Virginia Bd. of Prob. & Parole*, 199 W. Va. 161, 167, 483 S.E.2d 507, 513 (1996). "As the circuit court's lack of jurisdiction over this matter is dispositive, we need not address . . . [the] remaining assignments of error." *Holley v. Feagley*, 242 W. Va. 240, 245, 834 S.E.2d 536, 541 (2019).

We must first consider if this matter triggers Section 35 immunity.[21] Air Evac does not dispute that PEIA, as a state agency, constitutes "the State" for the purposes of sovereign immunity; instead, it argues that PEIA is not a "defendant" within the meaning of Section 35.[22] We find this argument unpersuasive.

We begin by acknowledging that certain suits do not trigger the sovereign immunity of the State:

> [C]ourts will entertain actions against State officials through the common law writs of mandamus, prohibition, and habeas corpus or through the courts' equitable powers to issue injunctions. In such cases, the "State" is not a defendant; rather, a State official is sued (usually in his or her official capacity) to require performance of a nondiscretionary duty of constitutional or statutory origin or to cease engaging in a course of conduct that violates some constitutional or statutory duty.

*Gribben v. Kirk*, 195 W. Va. 488, 493, 466 S.E.2d 147, 152 (1995). Ultimately, the core consideration is whether the true party in interest is the State:

> The Supreme Court of the United States has discussed that "when the action is in essence one for recovery of money from

---

[21] *See* W. Va. Const. art. VI, § 35 ("The state of West Virginia shall never be made defendant in any court of law or equity . . . .").

[22] It appears that this argument was not raised before the circuit court. Normally, we would decline to consider a new argument raised for the first time on appeal; however, as this argument pertains to an unwaivable jurisdictional issue, we will consider it. *See Argus Energy, LLC v. Marenko*, 248 W. Va. 98, 104, 887 S.E.2d 223, 229 (2023) ("In cases dealing with . . . jurisdiction, the rule against raising a new issue or argument [on appeal]—premised as it is on principles of waiver—does not apply . . ."); *Lewis v. Municipality of Masontown*, 241 W. Va. 166, 170, 820 S.E.2d 612, 616 (2018).

the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." In that same vein, the Supreme Court of the United States has determined that when a claim seeks recovery of funds from the state treasury as retroactive relief, the state retains sovereign immunity unless some other exception applies.

*W. Virginia Lottery v. A-1 Amusement, Inc.*, 240 W. Va. 89, 103–04, 807 S.E.2d 760, 774–75 (2017) (footnotes omitted) (citations omitted). Here, we observe that the named defending parties are PEIA's director and members of its Finance Board, sued in their official capacities. It follows then, that "when the action is in essence one for recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit." *Id.* at 103, 807 S.E.2d at 774 (2017).

Air Evac seeks to distinguish this matter from a typical claim for money damages. It highlights that, under its severability theory, PEIA's obligation to pay its "full billed" charges arises from the simple operation of PEIA's reimbursement statutes, less the language preempted by federal law.[23] We also recognize that Air Evac did not seek money damages alone—it also sought recognition that the APA and CCR controlled its dispute with PEIA. However, at bottom, Air Evac cannot escape nor deny what it seeks—a directive requiring the State to pay Air Evac the money it contends it is owed. Air Evac concedes this point in its prayer for relief before the circuit court:

Accordingly, Air Evac respectfully requests that this Court expeditiously affirm the validity the contested case hearing

---

[23] *See Cheatham III*, 910 F.3d 751, 759; *see also* W. Va. Code §§ 5-16-8a(a)–(b) (2016) (amended 2019), 5-16-5(c)(1) (2007) (amended 2023).

13

procedures of W. Va. Code R. § 151-1-3, et seq., and . . . grant a final order: (1) ordering that, under West Virginia law, Air Evac is entitled to payment of its billed charges on the disputed transports; and (2) ordering that, under West Virginia law, Respondents must promptly issue full payment on these transports.[24]

Air Evac concedes the same in its briefing before this Court:

For the foregoing reasons, this Court should reverse the Circuit Court's decision that Air Evac is not entitled to full payment for air ambulance transports from June 9, 2016, to June 4, 2019, and remand with instructions to order PEIA to fully reimburse Air Evac for these charges.[25]

As the Supreme Court of Appeals of West Virginia has explained: "Our cases reflect a desire to ensure the proper performance of official duties, and *so long as compliance with a judicial decree does not require the expenditure of money*, no potential for conflict with Section 35 is triggered." *W. Virginia Lottery v. A-1 Amusement, Inc.*, 240 W. Va. 89, 102, 807 S.E.2d 760, 773 (2017) (emphasis added) (quoting *Gribben v. Kirk*, 195 W. Va. 488, 494, 466 S.E.2d 147, 153 (1995)). Accordingly, we conclude that Air Evac's claim seeks money recovery from a State defendant. As result, Section 35 immunity is triggered.[26]

---

[24] No. 23-ICA-127, A.R. 20 (Petition for Appeal).

[25] No. 23-ICA-135, Pet'r's. Br. 23.

[26] As to any distinction between PEIA's posture as a "defendant" or "respondent" in this matter, we find it immaterial.

We note, in passing, that as a component of this argument, Air Evac asserts that judicial review of administrative matters does not implicate sovereign immunity at all. According to Air Evac, three cases stand for that proposition. *See Curry v. W. Virginia Consol. Pub. Ret. Bd.*, 236 W. Va. 188, 778 S.E.2d 637 (2015); *Charleston Area Med. Ctr., Inc. v. State Tax Dep't of W. Virginia*, 224 W. Va. 591, 687 S.E.2d 374 (2009) (per curiam);

14

We move on to consider whether any recognized exception to sovereign immunity is applicable. First, we address whether Air Evac seeks prospective or retroactive relief. "The crucial date for drawing a line between prospective and retroactive relief should be the initiation of the relevant . . . action and not the date of judgment." Syl. Pt. 1, *Skaff v. Pridemore*, 200 W. Va. 700, 490 S.E.2d 787 (1997) (citation omitted). Further, "where the relief sought involves an attempt to obtain a retroactive monetary recovery against the official based on his prior acts and which recovery is payable from State funds, the constitutional immunity provision bars such relief." *Id.* at Syl. Pt. 2 (citation omitted).

---

*Maupin v. Sidiropolis*, 215 W. Va. 492, 493, 600 S.E.2d 204, 205 (2004) (per curiam). Air Evac highlights that each case is an administrative matter involving a payment dispute with the State. Air Evac reasons that because the Supreme Court of Appeals of West Virginia heard these matters, sovereign immunity is no obstacle here. However, none of these cases ever addressed the applicability of sovereign immunity, let alone proclaimed administrative matters categorically exempt from sovereign immunity. Air Evac asks this Court for a profound holding based upon little authority. Here, we find *Kanawha County Public Library Board v. Board of Education of County of Kanawha*, 231 W. Va. 386, 396, 745 S.E.2d 424, 434 (2013) instructive:

> While this Court has noted its authority to *sua sponte* determine jurisdictional issues, including standing, it does not follow that an issue neither asserted by the parties nor addressed in this Court's opinions is binding upon it. This Court, like many others including the United States Supreme Court, adheres to the well-settled premise that "the exercise of jurisdiction in a case is not precedent for the existence of jurisdiction."

Acknowledging the constitutional gravity of sovereign immunity, we decline to hold what the Supreme Court of Appeals of West Virginia has not.

15

The parties dispute whether October 24, 2019—the date Air Evac initiated its request for a contested hearing regarding its payment demand—draws the line for prospective relief. From our review of the record, this demand is the first time that Air Evac formally sought payment as relief.[27] In *Skaff v. Pridemore*, 200 W. Va. 700, 705-6, 490 S.E.2d 787, 792-3 (1997) (per curiam), the Supreme Court of Appeals of West Virginia addressed the line-drawing challenges inherent to the prospective relief exception to sovereign immunity, which we find instructive:

> Although this is not a mandamus action but rather an appeal from an order of the circuit court, the principles upon which *Gribben* was based are the same . . . Applying the *Gribben* standard to these circumstances, we believe that the initiation of the appellees' Level IV grievance board complaint on August 16, 1991 is the crucial date, and conclude that pay awarded from that date is prospective and not barred by sovereign immunity. . . . [Accordingly,] the circuit court erred in making the award retroactive to October 16, 1989, inasmuch as the commencement date of the award should be August 16, 1991.

*Id.* 200 W. Va. at 703, 490 S.E.2d at 790 (discussing *Gribben v. Kirk*, 195 W. Va. 488, 490, 466 S.E.2d 147, 149 (1995)). In *Skaff*, rather than considering the original grievance as the point of "initiation," the Supreme Court of Appeals of West Virginia considered *the filing that produced the original decision appealed from*—in that case a Level IV grievance board complaint—to denote the "initiation of the relevant action." *Id.* Turning to the case at hand, the matter on appeal before this Court originated from Air Evac's October 24, 2019, demand letter. The transports Air Evac seeks payment for occurred between June 9,

---

[27] *See* No. 23-ICA-127, A.R. 68 (Demand for Contested Hearing); 147–48 (*Cheatham* Complaint).

16

2016, and June 4, 2019. Because all transports predate the initiation of this matter, we conclude the relief sought is retroactive, not prospective; therefore, this exception to sovereign immunity does not apply.

Air Evac's final argument supports the circuit court's order, seeking to offer a separate exception to sovereign immunity. Relying on *Mellon-Stuart Co. v. Hall*, 178 W. Va. 291, 296, 359 S.E.2d 124, 129 (1987), the circuit court found that the monetary relief sought by Air Evac stemmed from legislatively appropriated funds which, by virtue of being assigned to PEIA by the Legislature, were purposefully intended to be disbursed to providers like Air Evac for their charges. Referencing various cases,[28] the circuit court reasoned that:

> Sovereign immunity is inapplicable where the Legislature itself creates a program, appoints an agency to administer it, and requires the agency to make payment out of funds appropriated for that purpose. Seeking payment under such a scheme, as Air Evac has done here, simply does not implicate "the policy which underlies sovereign immunity," which "is to prevent the diversion of State monies from legislatively appropriated purposes." *Mellon-Stuart Co. v. Hall*, 178 W. Va. 291, 296 (1987).[29]

---

[28] In reaching this conclusion, the circuit court relied on three cases. *See Curry v. W. Virginia Consol. Pub. Ret. Bd.*, 236 W. Va. 188, 778 S.E.2d 637 (2015); *Charleston Area Med. Ctr., Inc. v. State Tax Dep't of W Virginia*, 224 W. Va. 591, 687 S.E.2d 374 (2009) (per curiam); *Maupin v. Sidiropolis*, 215 W. Va. 492, 493, 600 S.E.2d 204, 205 (2004) (per curiam). Similarly to Air Evac's argument addressed above, we find the circuit court misapprehended the value of these cases in concluding that an exception to sovereign immunity was applicable here. For a discussion of these cases, *see supra* note 26.

[29] No. 23-ICA-127, A.R. 604 (Order).

The core principle from *Mellon-Stuart* underpinning the circuit court's reasoning is an often cited one:

> Broadly stated, the policy which underlies sovereign immunity is to prevent the diversion of State monies from legislatively appropriated purposes. Thus, where monetary relief is sought against the State treasury for which a proper legislative appropriation has not been made, sovereign immunity raises a bar to suit.

*Id.* at 296, 359 S.E.2d at 129. The circuit court misapplies *Mellon-Stuart*. There, plaintiffs sought compensation from a state agency for completed construction work and initiated a proceeding before the court of claims.[30] *See id.* at 295–96, 359 S.E.2d at 128–29. The court of claims issued a decision recommending plaintiffs be awarded their requested payment; however, the Legislature declined to appropriate any money to compensate those claims. *Id.* Before the Supreme Court of Appeals of West Virginia, plaintiffs requested that the agency be forced to pay its recommended claims from the agency's budget. *Id.* The Court rejected this argument, declining to carve out a new exception in this context. Instead, the Court returned to the *Pittsburgh Elevator* exception[31] as the only possible avenue for plaintiff's recovery, reaffirming the general prohibition barring any monetary recovery that would directly draw from State funds.

> Our central holding in *Pittsburgh Elevator* was that an action putatively against a State agency, which seeks recovery only from the agency's liability insurance, is not barred by sovereign

---

[30] The Court of Claims has been renamed the West Virginia Legislative Claims Commission. *See* W. Va. Code § 14-2-4 (2017).

[31] *Pittsburgh Elevator Co. v. W. Virginia Bd. of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983) (claims within the State's insurance coverage and limits are not barred by sovereign immunity).

18

> immunity . . . consistent with the policy underlying sovereign immunity, since the availability of insurance proceeds assures that *any damages recovered would not be paid out of State coffers*.

*Mellon-Stuart Co. v. Hall*, 178 W. Va. 291, 296, 359 S.E.2d 124, 129 (1987) (emphasis added).

The factual context of *Mellon-Stuart* informs our understanding of "legislative appropriation." There, while plaintiffs received a favorable recommendation from the court of claims, the Legislature declined to make a specific appropriation to authorize compensation to the vendor; had the Legislature acted to approve the vendor's claim, sovereign immunity would have fallen away.[32] In light of the Legislature's rejection of a specific appropriation through the court of claims process, plaintiffs attempted an end-run around the need for legislative approval. Instead, relying on the court of claims' recommendation, plaintiffs aimed to reach directly into the agency's budget, requesting monetary relief. As above, this triggers the underlying rationale for sovereign immunity to bar such claims—the "diversion of state money from legislatively appropriated purposes to the payment of court awards."[33]

---

[32] *See State ex rel. McLaughlin v. W. Va. Ct. of Claims*, 209 W. Va. 412, 415, 549 S.E.2d 286, 289 (2001) (noting that only the Legislature can authorize the payment of Commission claims that are otherwise subject to our state's sovereign immunity).

[33] *Kerns v. Bucklew*, 178 W. Va. 68, 72, 357 S.E.2d 750, 754 (1987); *see also Mellon-Stuart Co. v. Hall*, 178 W. Va. 291, 296, 359 S.E.2d 124, 129 (1987).

It follows then, that the "legislative appropriation" discussed in *Mellon-Stuart* is akin to a legislative award of a specific sum to a specific entity, directly enacted by the Legislature. Therefore, returning to the case at hand, we conclude that the Legislature's general act of assigning basic budget appropriations to a state insurance agency that has been delegated with discretionary powers in administering those funds, does not amount to a "legislative appropriation" of the kind entertained in *Mellon-Stuart* which could pierce the State's sovereign immunity against claims for monetary relief.

Ultimately, we fail to identify the foundation for the circuit court's cited exception to PEIA's sovereign immunity. In *Mellon-Stuart*, arguments to expand the recognized exceptions to sovereign immunity were rejected; and in doing so, the Supreme Court of Appeals of West Virginia respected the broad grant of immunity afforded to the State by the West Virginia Constitution. We do the same.

## IV.    CONCLUSION

For the above reasons, we conclude that the circuit court erred in refusing to recognize PEIA's sovereign immunity. Accordingly, we reverse the circuit court's December 16, 2022, Final Order Granting, in Part and Denying, in Part Air Evac EMS, Inc.'s Petition for Appeal and remand this matter to be dismissed with prejudice.

Reversed and Remanded.

20